**Allen Spock HARTMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–94–00180–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 14, 1996.

Rehearing Overruled Feb. 16, 1996.

Discretionary Review Granted May 1, 1996.

---

George Scharmen, San Antonio, for appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LÓPEZ, GREEN, DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

This Court's opinion issued on January 10, 1996, is withdrawn and this opinion is substituted.

Appellant, Allen Spock Hartman, was convicted of driving while intoxicated. Punishment was assessed at ninety days in jail, probated for two years, and a fine of $300 plus court costs. In eight points of error, Hartman argues the trial court erred in denying his motion to suppress; erred in denying his requested jury instruction; erred in overruling his objection to the jury charge; and erred in denying his motion for new trial. We affirm.

### FACTS

Officer John Muzny was patrolling North on Highway 281 between Josephine and St. Mary's Street, on the night of July 8, 1992, when he noticed a VW Rabbit in front of him. The car had no taillights and was weaving within its lane. As Officer Muzny moved closer, he noticed that there were also no head lights shining on the pavement in front of the car. He turned on his emergency lights and pulled the car over. The driver, whom Officer Muzny later identified as Hartman, got out of the car and walked over towards him. Officer Muzny testified that Hartman's eyes were bloodshot and glassy, and his breath smelled strongly of alcohol. Officer Muzny explained to Hartman why he was being pulled over. Hartman explained that he only had had the car a little while, and he was not used to it; that was why he was weaving in the roadway and why he did not have his lights on.

Officer Muzny then conducted field sobriety tests on Hartman. On the Horizontal Gaze Nystagmus (HGN) test, a test used to detect for an involuntary jerking of the eye brought on by alcohol,[1] Officer Muzny noticed that Hartman's eyes "had a very distinct jerk," and that Hartman started to giggle uncontrollably when the test was administered. Out of the six possible indicia of intoxication, Hartman demonstrated all six. Officer Muzny then asked Hartman to perform the Rhomberg test—stand with his heels together, hands at his side, tilt his head back slightly, and keep his eyes closed for thirty seconds.[2] Officer Muzny instructed Hartman that, when he thought thirty seconds was over, he was to bring his head forward and open his eyes. Hartman lowered his head after four seconds. Officer Muzny then asked Hartman to perform the One Leg Stand Test.[3] Hartman put his foot down four times in thirty seconds. The last test Officer Muzny asked Hartman to perform was the Walk and Turn test.[4] Hart-

---

1. The onset of nystagmus can occur with an alcohol content as low as .05.

2. The Rhomberg test is used to detect above normal sway from side to side, back and forth circular sway, eye tremors, leg tremors, body tremors, and the ability to judge time.

3. The driver stands with his hands at his side and holds either foot off the ground about six inches, looks at his toes, and counts out loud until he has reached a certain number or is asked to quit. If the driver goes over thirty seconds, he is asked to stop. The purpose of this test is to check the driver's internal clock.

4. This is a divided attention test. During the first portion of the test, the driver is asked to stand with his left foot down and his right foot in front with his heel touching his toe, with his hands to his side, walk nine steps touching heel-to-toe counting each step out loud. At the end of the ninth step, the driver is to turn around and repeat the process. This test is to check the driver's ability to maintain balance and observe the instructions that are given to him.

man was unable to keep his balance during the instruction phase and frequently misstepped. Hartman failed all four tests. Officer Muzny arrested Hartman for driving without a valid driver's license or effective liability insurance and took him to the station at 11:55 p.m. At 12:36 and 12:39 a.m., Hartman was given intoxilyzer tests by Officer Muzny. The tests measured Hartman's blood alcohol content (BAC) at 0.138.

Prior to trial, Hartman filed a motion to suppress, *inter alia,* the results of the intoxilyzer test. Specifically, Hartman objected to any testimony regarding the intoxilyzer test, whether given by Officer Muzny or George McDougal, Bexar County's Breath Test Technical Supervisor.[5] The basis of Hartman's complaint was that "the results of the breath test are obtained from scientific techniques which have not been shown by clear and convincing evidence to be reliable and relevant under Rule 403, Tex.Rules Crim. Evid." At the hearing on the motion, Hartman's counsel further explained the basis of the complaint:

[W]e are saying the Intoxilyzer test itself is not admissible for two reasons. Under Rule 7—401 and 402, 701, 702 and 705 of the Rules of Evidence, that the Intoxilyzer results are unreliable for purposes of determining whether or not the defendant was intoxicated at the time he was in actual physical control of the motor vehicle which is what has been alleged by the State, and the only purpose for which the Intoxilyzer results are admissible is for the purpose under 670*ll*–5 to determine whether or not the individual was intoxicated while he was in actual physical control of the motor vehicle and we believe that the State is unable to show and we will be able to show that the result cannot be related back with any degree of accuracy to the time of driving from the time of the test to determine that the individual was in fact intoxicated, so we're saying the results are

unreliable, they're not relevant and that they should not be admitted because they would not assist the Trier of Fact and they are highly prejudicial.

. . . . .

[W]e're trying to suppress McDougal's testimony and everything about the breath test. We're saying it is not admissible because it is unreliable under Rule 702 and 705.

We don't believe that they are entitled to bring him in to testify concerning the results of that Intoxilyzer to try and show that my client was intoxicated while he was driving the motor vehicle because as Mr. McDougal will testify, he cannot relate back to the time of driving from the time of the test. He will tell this Court that this test shows what that individual's breath alcohol content was at the time he took the test and he can give an expert opinion on that, but what I want to show the Court is that he cannot give this Court an expert opinion as to what that man's breath test score was at the time he was driving and as a consequence, it's not admissible.

The State countered that McDougal was "not going to testify what the test result was at the time of the stop. He's going to testify what he believes his blood alcohol was earlier in time based on the test."

McDougal testified that at the time of the test Hartman's BAC was 0.138. From this, McDougal extrapolated that Hartman's BAC was between 0.110 and 0.15 or 0.16 at the time of the stop. When asked whether he knew what Hartman had eaten prior to the stop, his age, his drinking history, or his weight, McDougal testified that he knew only Hartman's age. However, McDougal explained that he was able to testify regarding Hartman's BAC range at the time of the stop because of his training in studying the effects

---

5. McDougal holds a bachelor's degree in Biology and a minor in Chemistry. He has completed the Test Operators Courses given by the San Antonio Police Department and the Texas Department of Public Safety (DPS) and Breath Test and Breath Test Supervisor's Courses given by Indiana University and by C.M.I. Incorporated. At the time of the test, McDougal was certified, and had been certified since 1977, as an operator and technical supervisor of the Intoxilyzer 5000 by the Scientific Director for DPS's alcohol testing program. McDougal also co-authored the Breath Test Operators Manual, which is used to train breath test operators in the State of Texas. *See* 37 Tex.Admin.Code § 19.4 (West 1995).

of alcohol upon a person's ability to safely drive a car; his study of how much alcohol it takes to reach a given alcohol concentration based on body weight; and his observations of over 2,000 students going through a complete drinking cycle at classes he taught at San Antonio College over the last seventeen years. McDougal also explained that the Intoxilyzer test "already accounts for the subject's body weight...." In short, McDougal repeatedly testified that, although he could not testify to a precise BAC level at the time of the stop, he could testify to a BAC range.

On cross-examination, counsel for Hartman and McDougal agreed that the standard elimination rate of alcohol is .02 per cent per hour. McDougal also testified that, while it would take one to two minutes for alcohol to begin to register in the body if a person drank a shot of alcohol on an empty stomach, it might take ten to fifteen minutes if the person had just finished a meal of meat and potatoes. Accordingly, if Hartman had just finished a full meal at the time of the stop—forty minutes before registering 0.138 on the Intoxilyzer—his BAC level at the time of the stop would most likely have been between 0.12 to 0.15.[6] McDougal also testified, however, that it would not be remarkable for a person to maintain the same BAC level for forty minutes or longer.

The trial judge denied Hartman's motion to suppress, and the case was tried to a jury. At trial, Officer Muzny and McDougal testified and were vigorously cross-examined by Hartman's counsel substantially as set forth above but in considerably more detail. After the State rested, Hartman called his friend of twenty-eight years, Timothy J. McHugh. McHugh was the bartender who served Hartman the night of his arrest. According to McHugh, Hartman arrived about 8:30, had two gin and tonics in thirty to thirty-five minutes, and left for thirty to forty-five minutes. When Hartman returned, he ate dinner and had another drink and most of a fourth. Hartman was giving McHugh a ride home when he was stopped. McHugh testi-

fied that Hartman showed no signs of intoxication on that night; therefore, unlike on numerous previous occasions, McHugh did not ask Hartman to turn his keys over.

Hartman also testified. According to Hartman, he arrived shortly before 8:00 p.m., had one drink, which lasted through a visit to the parking lot to look at a car, had dinner, a second and third drink, and most of a fourth drink before leaving with McHugh. Hartman testified that Office Muzny said that he pulled him over because of an inoperable taillight, and he explained his poor performance on the field sobriety tests as a result of his feeling under pressure and various physical ailments. On rebuttal, McDougal testified that Hartman could not have demonstrated a 0.138 BAC forty minutes after his arrest if he had had just four gin and tonics between 8:00 and 11:00 p.m.; to blow a 0.138 BAC a person would have to have six drinks in his system at the time the BAC was taken. Given the standard elimination rate, this would mean Hartman must have had a total intake of more than six drinks.

The jury found Hartman guilty, and the trial judge sentenced him to two years, probated for two years, as well as court costs, a $300 fine, and DWI education.

### MOTION TO SUPPRESS

In his first and second points of error, Hartman argues that the trial court erred in overruling his motion to suppress because (1) the technical supervisor's opinion as to the results of the intoxilyzer test were not scientifically reliable, and (2) the probity of his opinion was far outweighed by its prejudicial value. We disagree.

#### Standard of Review

■■■■ In reviewing a motion to suppress, "the appellate court does not engage in a factual review but decides whether the trial judge's fact findings are supported by the record." *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). A trial court's determination as to the admissibility of expert testimony is governed by an abuse of discre-

---

**6.** Hartman testified that he was served four drinks between 8:30 and 11:30, but only drank three, and he ate a meal consisting of three different types of pork. The test result may or may not have been affected, depending upon what time he ate.

tion standard. *See Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992); *Banda v. State*, 890 S.W.2d 42, 58–59 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). An abuse of discretion will be found only "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). "If the trial court finds that the witness has a specialized skill, training, or other knowledge, and finds that his testimony will assist the trier of fact to understand the evidence or to determine a fact issue, then such testimony is admissible." *Banda*, 890 S.W.2d at 58–59; Tex.R.Crim. Evid. 702. The burden of establishing the admissability of an expert's opinion rests on the party offering such evidence. *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Crim.App. 1981) (en banc).

### Application of Daubert, Kelly

Hartman first argues that the State failed to make the showing required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim. App.1992), and most recently in *Emerson v. State*, 880 S.W.2d 759 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). We disagree.

The courts in *Daubert, Kelly,* and *Emerson* confronted evidence based upon *novel* scientific theory—bendectin in *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2791–92; DNA evidence in *Kelly*, 824 S.W.2d at 571; and HGN evidence in *Emerson*, 880 S.W.2d at 763. We are not faced with a similar situation here. Rather, we are here confronted by an intoxilyzer test that is rendered admissible by statute, Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, § 3(a) (Vernon Supp.1995), and that has long been admissible without any predicate showing as to reliability, *see Slagle v. State*, 570 S.W.2d 916 (Tex.Crim.App.1978). This is simply not a case involving *novel*

scientific theory or even conflicting scientific theories. Indeed, Hartman's counsel and McDougal agreed as to the rate of elimination; they agreed that people absorb alcohol at different rates depending upon their body weight, drinking patterns, amount of food in the stomach, etc.; and they agreed that McDougal did not have enough test results either to graph an absorption/elimination curve or to pinpoint Hartman's BAC at the moment he was first seen by Officer Muzny.

■ In our view, the procedures and burden of persuasion enunciated in *Kelly* do not apply unless the proffered testimony is indeed novel. *See Kelly*, 824 S.W.2d at 573 n. 13 (reserving question of the burden of persuasion applicable under Rule 702 "when the scientific evidence proffered is not truly 'novel,'" but noting that the Supreme Court has held in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), that all preliminary fact findings under Federal Rule of Evidence 104(a) are subject to a preponderance standard).[7] Rather, when the proffered evidence is not novel, the admissibility of the evidence should be examined in line with the more general criteria of Rule 702, Tex.R.Crim. Evid.:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 thus provides a two-prong test for the admissibility of expert testimony: (1) the expert must be qualified by knowledge, skill, experience, training, or education; and (2) the expert testimony must assist the trier of fact to understand the evidence or decide a fact. *See Negrini v. State*, 853 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1993, no pet.); *Perryman v. State*, 798 S.W.2d 326, 329 (Tex. App.—Dallas 1990, no pet.); *Trevino v. State*, 783 S.W.2d 731, 733–34 (Tex.App.— San Antonio 1989, no pet.).

---

7. We note that the Supreme Court in *Daubert* limited the application of its holding to scientific knowledge. It did not discuss whether the same criteria applied to technical or other specialized knowledge. *See Daubert*, 509 U.S. at ——, 113 S.Ct. at 2795, n. 8.

■ The record before us does not establish that the trial court abused its discretion in denying Hartman's motion to suppress and admitting McDougal's testimony. McDougal was well-qualified to testify regarding a BAC range by many years of experience and training, and his testimony was undoubtedly of assistance to the jury since Hartman's BAC at the time he was first seen by Office Muzny was the key issue in the case. Nor is there anything in the record that would even suggest that the probative value of McDougal's testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury under Rule 403, TEX. R.CRIM.EVID. Accordingly, we hold that the trial court did not abuse its discretion in admitting McDougal's testimony, and Hartman's first and second points of error are overruled.

### CHARGE ERROR

■ In his next two points of error, Hartman argues the trial court erred in refusing his requested jury instruction and erred in overruling his objection that the court's charge reduced the State's burden because it did not require the State to "pin down" the relevant point in time that he was in actual physical control of a motor vehicle. We disagree.

The court's charge provided:

[A] person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place.

By the term "Intoxicated," as used herein, is meant:

(A) Not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body.

(B) Having an alcohol concentration of 0.10 or more.

"Public Place" means: Any place to which the public or a substantial group of the public has access and includes, but it is not limited to, streets, highways, . . .

Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of July, 1992, in Bexar County, Texas, Allen Spock Hartman, . . ., did then and there drive or operate a motor vehicle in a public place while [Hartman] was intoxicated, to wit: By reason of the introduction of alcohol into the body, then you will find [Hartman] "guilty" as charged.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will find [Hartman] "not guilty."

We disagree with Hartman that the charge did not require the State to prove that Hartman was intoxicated at the time he was in actual physical control of a motor vehicle. The charge specifically states that to find Hartman guilty the jury must find that he was intoxicated *"while"* he was driving or operating a motor vehicle in a public place. "While" means "the time during which an action takes place or a condition exists." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2604 (1981 ed.). The charge thus required the jury to find that Hartman was intoxicated at the time he was driving; it did not relieve the State of proving each element of the offense beyond a reasonable doubt. *See Mullan v. State,* 668 S.W.2d 427, 428 (Tex.App.—Dallas 1984, no pet.). Hartman's third and fourth points of error are overruled.

### PROSECUTORIAL MISCONDUCT

■ In points of error five and eight, Hartman argues that the trial court erred in denying his motion for new trial because the office of district attorney engaged in an unauthorized communication with the venire in violation of art. 36.22, TEX.CODE CRIM.PROC. ANN. and he was thereby denied due course of law under article I, sections 13 and 19 of the Texas Constitution.[8] We disagree.

---

8. Hartman argues in points of error six and seven that the trial court erred in denying his motion for new trial because the office of district attorney engaged in improper influence by entering into an unauthorized communication with the venire in violation of article 36.04, TEX.CODE CRIM.PROC.ANN. This provision was repealed in 1985. Act of June 18, 1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws 454, *repealed by* Act of June 14, 1985, 69th Leg., R.S., ch. 685, § 9, 1985 Tex.Gen.Laws 2474. Therefore points of error six and seven are overruled.

At the time of Hartman's trial, Bexar County, the district attorney's office, and the DWI task force were conducting an anti-DWI campaign. Placed throughout the courthouse, and approximately twenty feet from the central jury room, were posters containing DWI statistics and urging people to join the anti-DWI campaign. Hartman argues that this campaign had the "express purpose of influencing the decisions of jurors in DWI trials."

Article 36.22 provides:

> No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

To prove a violation of article 36.22, "the defendant has the burden to establish that if a conversation did occur between a nonsequestered juror and someone else ... the discussion involved matters *concerning the specific case at trial.*" *Chambliss v. State,* 647 S.W.2d 257, 265–66 (Tex.Crim.App.1983) (quoting *Romo v. State,* 631 S.W.2d 504, 506 (Tex.Crim.App.1982) (emphasis in original)).

There is absolutely nothing in this record to indicate or even suggest that any member of the district attorney's office discussed this case with any potential juror. There is also no evidence that the contents of these posters had any effect upon any potential juror. Only one juror saw the poster, but he did not recall what it said, and he testified that it did not affect his deliberations. Because we find that there was no conversation with any juror and because Hartman failed to show the poster prejudiced his rights, we overrule Hartman's sixth and eighth points of error. *See Kingsley v. State,* 744 S.W.2d 191, 194–96 (Tex.App.—Dallas 1987), *pet. dism'd,* 784 S.W.2d 688 (Tex.Crim.App.1990) (en banc).

The judgment is affirmed.

LOPEZ and GREEN, JJ., concur.