**Allen Spock HARTMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 484–96.**

Court of Criminal Appeals of Texas, En Banc.

April 23, 1997.

George Scharmen, San Antonio, for appellant.

Angela Moore, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

A jury convicted appellant of driving while intoxicated. Punishment was assessed at ninety days imprisonment, probated for two years, and a fine of $300. The court of appeals affirmed. *Hartman v. State,* 917 S.W.2d 115 (Tex.App.—San Antonio 1996). We granted appellant's petition for discretionary review to determine whether the admissibility criteria for scientific evidence announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim.App.1992), apply to all "scientific evidence." [1]

---

**1.** We also granted the following two points of error:

(2) Is an expert opinion, extrapolating intoxilyzer results to an earlier point in time in order

Officer John Muzny was on patrol the night of July 8, 1992, when he noticed appellant's car weaving and operating without its taillights. As Muzny approached the car, he also noticed it did not appear to have its headlights on. He pulled the car over and appellant got out of the car. Muzny recognized that appellant exhibited signs of intoxication, including bloodshot eyes, and that his breath smelled strongly of alcohol. Muzny administered several field sobriety tests to appellant, all of which appellant failed. He then arrested appellant for driving without a valid driver's license or effective liability insurance and took him to the police station at 11:55 p.m. At both 12:36 and 12:39 a.m., Muzny gave appellant intoxilyzer tests which measured appellant's blood alcohol content (BAC) at 0.138.

Prior to trial, appellant moved to suppress the results of the intoxilyzer test. Among other grounds, appellant objected to testimony given by Muzny or George McDougall, Bexar County's Breath Test Technical Supervisor, concerning the results of the intoxilyzer test on the basis that such testimony pertained to scientific techniques which were not shown to be reliable or relevant under Rule of Criminal Evidence 702.[2] The court of appeals described McDougall's testimony at the hearing on appellant's motion to suppress as follows:

> McDougall testified that at the time of the test appellant's BAC was 0.138. From this, McDougall extrapolated that appellant's BAC was between 0.110 and 0.15 or 0.16 at the time of the stop. When asked whether he knew what appellant had eaten prior to the stop, his age, his drinking history, or his weight, McDougall testified that he knew only appellant's age. However, McDougall explained that he was able to testify regarding appellant's BAC

range at the time of the stop because of his training in studying the effects of alcohol upon a person's ability to safely drive a car, his study of how much alcohol it takes to reach a given alcohol concentration based on body weight, and his observations of over 2,000 students going through a complete drinking cycle at classes he taught at San Antonio College over the last seventeen years. McDougall also explained that the Intoxilyzer test "already accounts for the subject's body weight...." In short, McDougall repeatedly testified that, although he could not testify to a precise BAC level at the time of the stop, he could testify to a BAC range.

> On cross-examination, counsel for appellant and McDougall agreed that the standard elimination rate of alcohol is .02 percent per hour. McDougall also testified that, while it would take one to two minutes for alcohol to begin to register in the body if a person drank a shot of alcohol on an empty stomach, it might take ten to fifteen minutes if the person had just finished a meal of meat and potatoes. Accordingly, if appellant had just finished a full meal at the time of the stop—forty minutes before registering 0.138 on the Intoxilyzer—his BAC level at the time of the stop would most likely have been between 0.12 to 0.15. McDougall also testified, however, that it would not be remarkable for a person to maintain the same BAC level for forty minutes or longer.

*Hartman,* 917 S.W.2d at 118–19. The trial judge denied appellant's motion to suppress.

On appeal, appellant argued that the State failed to make the Rule 702 showing for admissibility of scientific expert testimony as required by the United States Supreme Court in *Daubert,* supra, and by this Court in

to give the chemical concentration of alcohol in the blood and tissues of a particular person at the earlier point in time, a genre of "scientific evidence" within the meaning of *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992)? (3) Where the State relies upon the *per se* definition of intoxication of .10 breath alcohol concentration at the time the individual was driving or in actual physical control of a motor vehicle, is the defendant entitled to a jury instruction which requires the State to properly

prove their case by extrapolation to the point in time when the defendant was "driving or in actual physical control of a motor vehicle?" Due to the disposition of appellant's first point of error, we do not reach these points; they are dismissed without prejudice.

**2.** As described in the court of appeals' opinion, appellant objected under Rule 401, 402, 403, 702 and 705. *Hartman,* 917 S.W.2d at 118.

*Kelly*, supra and *Emerson v. State*, 880 S.W.2d 759 (Tex.Crim.App.), *cert. denied*, 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). The court of appeals held *Daubert*, *Kelly*, and *Emerson* were inapplicable because those cases concerned evidence based upon *novel* scientific theory. By contrast, the court of appeals stated, the instant case did not involve novel scientific evidence, noting that it was confronted by an intoxilyzer test rendered admissible by statute [3] without any predicate showing as to reliability. *Hartman*, 917 S.W.2d at 120. The court of appeals concluded that "the procedures and burden of persuasion enunciated in *Kelly* do not apply unless the proffered testimony is indeed novel" and that "when the proffered evidence is not novel, the admissibility of the evidence should be examined in line with the more general criteria of Rule 702." *Id.* The court continued, "Rule 702 thus provides a two-prong test for the admissibility of expert testimony: (1) the expert must be qualified by knowledge, skill, experience, training, or education; and (2) the expert testimony must assist the trier of fact to understand the evidence or decide a fact." Concluding McDougall was qualified to testify by his many years of experience and training, and that his testimony was of assistance to the jury, the court of appeals determined that the trial court did not abuse its discretion in denying appellant's motion to suppress.

■ In *Kelly*, we held Rule 702 superseded the *Frye* "general acceptance" standard for the admissibility of scientific expert testimony. *Kelly*, 824 S.W.2d at 572. The trial court's task in assessing admissibility under Rule 702 "is to determine whether the scientific evidence is sufficiently *reliable* and *relevant* to help the jury in reaching accurate results." *Id.* (emphasis added). To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid;

(2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 573. We also provided a list of non-exclusive factors that could affect a trial court's determination of reliability. *Id.* We noted "[u]nreliable ... scientific evidence simply will not assist the [jury] to understand the evidence or accurately determine a fact in issue; . . . ." *Id.* at 572.[4]

In *Daubert*, the United States Supreme Court held, in light of the adoption of Federal Rule 702, the *Frye* test was no longer the standard for admissibility of scientific expert testimony. *Daubert*, 509 U.S. at 585–87, 113 S.Ct. at 2793. *Daubert* set forth a two-pronged reliability and relevance standard virtually identical to the one we had adopted in *Kelly*. *Id.* at 591–93, 113 S.Ct. at 2796. The Supreme Court explained "[t]his entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* The Texas Supreme Court followed suit in *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995), adopting the tests enunciated in *Kelly* and *Daubert.*

■ Nowhere in *Kelly* did we limit the two-pronged standard to *novel* scientific evidence. The Supreme Court in *Daubert* directly addressed the issue in a footnote, stating "[a]lthough the *Frye* decision itself focused exclusively on 'novel' scientific techniques, we do not read the requirements of Rule 702 to apply specifically or exclusively to unconventional evidence." [5] *Daubert*, 509 U.S. at 593 n. 11, 113 S.Ct. at 2796 n. 11. The Supreme Court noted that "under the Rules, the trial judge must ensure that *any and all scientific testimony* or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. at 2795 (emphasis add-

---

3. Tex.Rev.Civ.Stat. Ann. Art. 6701l–5, 3(a) (Vernon Supp.1995).

4. Recently, in *Jordan v. State*, 928 S.W.2d 550 (Tex.Crim.App.1996), we addressed the admissibility of scientific expert testimony under Rule 702, following the principles established in *Kelly* and *Daubert*. We there reiterated the use of the two-pronged reliability and relevance standard

for determining the admissibility of scientific expert testimony.

5. Likewise, the phrase "novel scientific evidence" used in *Kelly*, was not intended as a limitation of the standard announced in that case; rather, we used that phrase in rejecting *Frye*, a test specifically governing admissibility of novel scientific evidence.

ed). We likewise see no value in having a different standard of admissibility for novel scientific evidence. The problems presented in determining whether or not a particular type of evidence would be considered "novel" are daunting enough to reject application of a dual standard. Moreover, we observe that the factors and criteria set forth in *Kelly* as bearing upon the reliability of proffered scientific evidence are adequate measure for assuring that "novel" scientific evidence which is "junk science" is excluded. These factors "address the soundness of the underlying scientific theory and technique." *Jordan v. State*, 928 S.W.2d 550, 554 (Tex. Crim.App.1996). This is the linchpin of Rule 702:

> [R]eliability depends upon whether the evidence has its basis in sound scientific methodology. This demands a certain technical showing. Accordingly, it is upon the reliability inquiry that trial courts can weed out testimony pertaining to so-called "junk science." *Id.* It is largely to this end that trial judges are called upon to serve as "gatekeepers." *Daubert*, supra. While "junk science" or otherwise inadequately tested scientific theories might be shown to relate to the facts of a case and to that extent be of assistance to the jury, it will not have a sufficiently sound scientific basis to be reliable.

*Id* at 555.

The standard adopted by this Court in *Kelly* applies to all scientific evidence offered under Rule 702. The court of appeals erred in applying a standard different than that set forth in *Kelly*. Accordingly, we reverse the judgment of the court of appeals and remand this cause to that court to reconsider the admissibility of the evidence in light of the appropriate standard.

KELLER, Judge, concurring and dissenting on appellant's petition for discretionary review.

I agree with the majority that *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992) announces the proper test for all scientific evidence. As the majority correctly states, scientific evidence must meet a three-pronged reliability test to be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 573.

I would add, however, that in many instances, prongs (1) and (2) can be decided by appellate courts as matters of law. Absent constitutional concerns, the Legislature can recognize the validity of particular scientific theories and techniques through statutory enactment. Trial and appellate courts would be bound to follow such enactments. Even absent legislative action, however, the validity of a particular scientific theory or technique may be established well enough that parties should not be required to relitigate its admissibility. Indeed, the Supreme Court has recognized that some scientific principles are so well established that they may be subject to judicial notice. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 11, 113 S.Ct. 2786, 2796 n. 11, 125 L.Ed.2d 469, 482 n. 11 (1993). Even if a scientific theory or technique does not occupy a status deserving of judicial notice, it may nevertheless have been established sufficiently to warrant admissibility as a matter of course. Any disputes about the validity of such theories and techniques may then be litigated in the adversarial setting before the factfinder. Permitting judicial recognition of the validity of a scientific theory or technique would provide guidance to trial courts through the development of precedent. *See Villarreal v. State*, Keller, J. concurring, 935 S.W.2d 134, 148–49 (Tex.Crim.App.1996). Trial courts should not become constantly embroiled in determining the admissibility of scientific theories and techniques that have already been well established as reliable.

Of course, absent legislative action, until an appellate court announces that a scientific theory or technique has been proven sufficiently reliable to be admissible as a matter of law, parties will have to litigate its admissibility; this is true of any issue of first impression. *Villarreal*, Keller, J. concurring, at 147–48. Moreover, the reliability of many scientific theories and techniques may not be sufficiently established that an appellate court can with confidence declare the theory

or technique admissible as a matter of law. In such cases, an appellate court should refrain from making such a declaration until such time as scientific knowledge has progressed to enable doing so. Further, even after a particular theory or technique has been declared admissible as a matter of law, parties should be permitted to urge a reexamination of the status of a theory or technique if subsequent developments in the scientific field cast doubt upon its continuing validity.

Finally, unlike the first two prongs of the *Kelly* test, the third prong—whether the technique has been properly applied on the occasion in question—must necessarily be decided on a case-by-case basis.

With these principles in mind, I turn to the present case. The Legislature has enacted a statute governing the admissibility of breath alcohol tests. Such tests are admissible so long as they are "performed according to the rules of the Texas Department of Public Safety and by an individual possessing a valid certificate issued by the Texas Department of Public Safety for that purpose." Texas Revised Statutes, Article 6701*l*-5, § 3(b)(Vernon's Supp.1993). The Legislature has statutorily dispensed with any need to analyze the validity of the theory and technique behind the intoxilizer. The only open issue for the trial court to address is whether a test in a particular case satisfies the statutory requirements, i.e. the third prong of *Kelly*—whether the technique was properly applied on the occasion in question.

But the statute does not address the reliability of techniques for interpreting or extrapolating intoxilizer results, and I would remand for the Court of Appeals to make a determination in the first instance. That court should analyze the various theories and techniques in dispute and determine whether some or all may be declared sufficiently well established as reliable to be admissible as a matter of law. If the court refrains from making such a declaration with regard to a particular theory or technique, then it should determine whether the trial court abused its discretion in determining the theory or technique to be reliable under the facts presented. Finally, even when a theory or technique is determined to be reliable, the Court of Appeals should determine whether the trial court abused its discretion in determining that the technique was correctly applied on the occasion in question.

I would remand the case to the Court of Appeals to reconsider the admissibility of the evidence in light of the comments made in this opinion.

McCORMICK, P.J., joins.