**Gilberto Lerma TORRES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–02–189–CR.**

Court of Appeals of Texas,
Fort Worth.

June 5, 2003.

J.T. Borah, Denton, for appellant.

Bruce Isaacks, Criminal District Attorney, Catherine Luft, Amanda Parker, Karen Turner, Assistant District Attorneys, Denton, Matthew Paul, State Prosecuting Attorney, Austin, for appellee.

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

Appellant Gilberto Lerma Torres appeals his conviction for misdemeanor driving while intoxicated ("DWI"), which was enhanced by a prior DWI conviction. A jury found him guilty, Appellant pleaded true to the enhancement, and the trial court sentenced him to 210 days' confinement in the Denton County Jail and suspended his driver's license. Appellant raises five points. We will affirm.

### II. FACTUAL BACKGROUND

Between approximately 12:30 a.m. to 12:45 a.m. on December 31, 1999, Daniel Tsakonas, Brett Allen, and James Beugler were driving north on Interstate 35 from Dallas to Lewisville. As they approached the Highway 121 bypass, the three men saw a car approaching them on their side of the highway because it was being driven in the wrong direction. Beugler testified that the car was coming toward them down the shoulder of the road, and that it would swerve out into the traffic lanes before moving back onto the shoulder. The car, which was being driven by Appellant, hit an automobile in front of the car being driven by Tsakonas and then veered into the left lane, where it collided with Tsakonas's car.

After the accident, Allen and Beugler went to Appellant's car to check on him. When Allen asked Appellant if he was okay, Appellant nodded his head yes. Allen also asked Appellant if he had been drinking, and he again nodded his head yes. Beugler called 911, and police and EMS came to the scene of the accident.

Appellant was taken by ambulance to Medical Center of Lewisville, and he had no traumatic life-threatening injuries. Of-

ficer Scott Hayney, who helped clear the accident site, did not perform any field sobriety tests on Appellant at the accident scene, but he went to the hospital and spoke with Appellant at approximately 1:30 a.m. or slightly before 2:00 a.m. During his time with Appellant, Officer Hayney smelled a moderate odor of alcohol on Appellant's breath and noticed that Appellant's eyes were red, glassy, and bloodshot.

Because Appellant was lying in his hospital bed and because Appellant did not want to participate in a horizontal gaze nystagmus exam, Officer Hayney did not perform any field sobriety tests at the hospital. Instead, Officer Hayney asked him questions about the events leading up to the accident. According to Officer Hayney, Appellant did not realize that he was driving on the wrong side of I–35, which is an interstate highway with three lanes in both directions. Also, Appellant told Officer Hayney that he "did not know Lewisville, Texas, or why he was coming from Lewisville" and that he thought he had been driving on Highway 635 or the LBJ Freeway between Dallas and Irving en route to Arlington, Texas.

When Officer Hayney asked Appellant about whether he had been drinking, Appellant told him that he had had a quart of beer about 4:00 o'clock in the afternoon, which Officer Hayney testified was not consistent with the odor he smelled on Appellant an hour after the accident. In Officer Hayney's opinion, Appellant was legally intoxicated at the time he was interviewed in the hospital.

After obtaining Appellant's written consent, Officer Hayney asked Rose Becknauld, a phlebotomist at Lewisville Medical Center, to draw a blood sample from Appellant around 3:00 a.m. The sample was mailed to the Texas Department of Public Safety Crime Lab in Garland, Texas on December 31, 1999, and the lab received the sample on February 3, 2000. The lab performed two tests on Appellant's blood. One test showed that Appellant's blood contained .1432 grams of alcohol per 100 milliliters of blood, while the other test registered .1488, both of which were over the legal limit of .08. After hearing and considering all of the evidence presented at trial, a jury found Appellant guilty of misdemeanor DWI.

## III. ANTI–DWI POSTERS

In his first point, Appellant contends that the trial court erred in not granting his request that certain anti-DWI posters be removed from the lobby of the building in which the trial took place. Specifically, Appellant argues that the presence of these posters resulted in the denial of his rights to a fair trial by an impartial jury, to due process, and to the due course of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 13, and 19 of the Texas Constitution. *See* U.S. CONST. amend. V, VI, XIV; TEX. CONST. art. I, §§ 10, 13, 19. The State responds that there is no evidence that the posters influenced the jurors in this case.

Before voir dire began, Appellant objected to two DWI-related posters which were located in the lobby of the building where Appellant's trial occurred. Appellant does not, however, cite any authority in support of his contention that his constitutional rights were violated by the mere presence of these posters. Moreover, as the State points out in its brief, Appellant has not shown that any of the jury members in this case were prejudiced by the posters. *See Hartman v. State,* 917 S.W.2d 115, 121–22 (Tex.App.-San Antonio 1996) (overruling defendant's argument that he was denied due course of law due to anti-DWI campaign posters being placed throughout

the courthouse and approximately twenty feet from the central jury room because there was no evidence that the posters had any effect upon any potential juror), *rev'd on other grounds,* 946 S.W.2d 60 (Tex. Crim.App.1997).

As in *Hartman,* Appellant directs us to nothing in this record that suggests that the contents of these posters had any effect upon any juror in this case. *See id.* Accordingly, we overrule Appellant's first point.

## IV. BLOOD TEST RESULTS: QUALIFICATIONS OF PHLEBOTOMIST

In his second point, Appellant argues that the trial court erred in allowing the admission of the blood test results because the blood was not drawn by a person qualified under section 724.017(a) of the transportation code. *See* TEX. TRANSP. CODE ANN. § 724.017(a) (Vernon 1999). In response, the State contends that the phlebotomist who drew Appellant's blood was qualified under section 724.017(a). *See id.*

■ We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard of review. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). According to section 724.017(a), "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter." TEX. TRANSP. CODE ANN. § 724.017(a). Because a phlebotomist is not listed among those occupations which automatically qualify under the statute, a phlebotomist must be proven to be "qualified" before a blood sample he or she takes satisfies the statute. *Cavazos v. State,* 969 S.W.2d 454, 456 (Tex.App.-Corpus Christi 1998, pet. ref'd) (holding State failed to prove that the person drawing blood was qualified

under section 724.017 when no one testified regarding the qualifications of the person who drew the blood and no evidence established that the blood was drawn by someone the hospital had determined to be qualified); *State v. Bingham,* 921 S.W.2d 494, 495 (Tex.App.-Waco 1996, pet. ref'd) (overruling defendant's motion to suppress blood results and holding phlebotomist was a "qualified technician," where phlebotomist and her supervisor testified to her qualifications).

■ In this case, Becknauld testified to her qualifications outside the presence of the jury. She testified that she was a third-shift phlebotomist at Lewisville Hospital and that her duties were to collect specimens for hospital patients and the emergency room. Becknauld testified that while she had no formal training, she had been a phlebotomist for the past twenty-four years. She also testified that, based on her experience, for the past six years she had been certified through the National Phlebotomy Association. Becknauld testified that she drew blood every day, and when asked how many times she had drawn blood in the last twenty-four years, she replied, "Thousands and thousands and thousands." Further, Becknauld testified that she was absolutely familiar with the medical procedures to draw blood. After describing the general procedure, she discussed the specific procedure used for drawing blood for purposes of an alcohol test.

Based on the foregoing testimony, we hold that the trial court did not abuse its discretion in determining that Becknauld was qualified under section 724.017 and in admitting Appellant's blood test results. *See* TEX. TRANSP. CODE ANN. § 724.017(a); *Weatherred,* 15 S.W.3d at 542; *Bingham,* 921 S.W.2d at 495. We therefore overrule point two.

## V. BLOOD TEST RESULTS: RETROGRADE EXTRAPOLATION

■ In his third point, Appellant complains that the trial court erred in allowing the admission of the blood test results in violation of Rules 401, 402, and 403 of the Texas Rules of Evidence. *See* TEX.R. EVID. 401, 402, 403. Appellant asks this court to hold that the alcohol concentration evidence is not admissible without retrograde extrapolation;[1] however, the court of criminal appeals has stated that it has never accepted this argument. *See Beard v. State,* No. 0282–00, slip op. at 8, 2002 WL 31116936, at *3 (Tex.Crim.App. Sept. 25, 2002); *see also Mireles v. Texas Dep't of Public Safety,* 9 S.W.3d 128, 132 (Tex. 1999); *Price,* 59 S.W.3d at 300; *O'Neal v. State,* 999 S.W.2d 826, 832 (Tex.App.-Tyler 1999, no pet.); 6 MICHAEL B. CHARLTON, TEXAS PRACTICE: TEXAS CRIMINAL LAW § 29.3 (2d ed.2001) (recognizing that a number of Texas courts have rejected the requirement for expert extrapolation). *But see Bagheri v. State,* 87 S.W.3d 657, 660 n. 1 (Tex.App.-San Antonio 2002, pet. granted) (distinguishing *Mireles* and *Price* as being based on pre-*Daubert* law and stating that "[w]hether the intoxilyzer test results are admissible in the absence of a retrograde extrapolation is a question the Texas Court of Criminal Appeals has expressly left open"). In light of this precedent and the other evidence proving that Appellant was intoxicated at the time he was driving his car, we hold that the trial court did not abuse its discretion in admitting the evidence of Appellant's blood test without retrograde extrapolation evidence. *See Beard,* No. 0282–00, slip op. at 8, 2002 WL 31116936, at *3; *Weatherred,* 15 S.W.3d at 542; *Price,* 59 S.W.3d at 300. Accordingly, we overrule point three.

## VI. BLOOD TEST RESULTS: CONFRONTATION RIGHTS

■ In his fourth point, Appellant argues that the trial court erred in allowing the admission of the blood test results because Appellant's right to confront and cross-examine witnesses against him was violated. Specifically, Appellant contends that because the computer program used in the gas chromatograph machine that was used to analyze his blood was not available for him in court to examine, he was not able to properly cross-examine the "witness," as Appellant describes the computer program, as to its calculations and calibrations. We disagree.

Contrary to Appellant's characterization of the computer program as a "witness," the program which ran the gas chromatograph machine was not a person and could not be called to testify. *See* TEX.R. EVID. 601 ("Every *person* is competent to be a witness except as otherwise provided in these rules.") (emphasis added); *cf. Stevenson v. State,* 920 S.W.2d 342, 343 (Tex. App.-Dallas 1996, no pet.) ("The intoxilyzer instrument is a computer, not a person. By definition, therefore, the intoxilyzer is not a declarant."). We hold that Appellant's right to confront and cross-examine witnesses against him was not violated because the State could not have called the computer program as a witness.

Moreover, Appellant's specific objection at trial focused solely on his right to confront and cross-examine the computer program, not on the scientific reliability of the machine nor on his right to confront and cross-examine Chris Youngkin, the crimi-

---

1. Retrograde extrapolation is the computation back in time of the blood-alcohol level that estimates the blood-alcohol level at the time of driving based on a test result from some time later. *Price v. State,* 59 S.W.3d 297, 300 (Tex.App.-Fort Worth 2001, pet. ref'd) (citing *Mata v. State,* 46 S.W.3d 902, 908–09 (Tex. Crim.App.2001)).

nalist[2] offered by the State to provide expert testimony regarding the gas chromatograph and Appellant's blood test. In fact, Appellant conceded at trial that the State met its burden under *Kelly v. State* with respect to Youngkin's testimony on gas chromatography. 824 S.W.2d 568, 573 (Tex.Crim.App.1992). Further, Youngkin testified that gas chromatography testing was accepted in the scientific community and that the way he applied the underlying theory of the testing in this case was accepted in the scientific community. We cannot say that the trial court abused its discretion in admitting evidence from Appellant's blood tests on the basis of Appellant's alleged violation of his right to confront and cross-examine witnesses against him. *See Weatherred,* 15 S.W.3d at 542. We therefore overrule point four.

## VII. SPECIFIC VERDICT FORM

 In his fifth point, Appellant contends that the trial court erred in refusing his request for a specific verdict form.[3] We disagree. As we have stated before, "the definition of 'intoxicated' in the DWI statute sets forth alternative means of committing one offense and does not set forth separate and distinct offenses." *Price,* 59 S.W.3d at 303. Therefore "a special verdict form is not required when a defendant is charged with DWI under multiple theories of intoxication." *See id.* We hold the trial court did not err in refusing Appellant's request for a specific verdict form, and we overrule his fifth point.

**2.** When asked what a criminalist is, Youngkin replied, "I analyze drug evidence and do blood alcohol determinations."

**3.** The charge read, in pertinent part:

Now therefore, if you find from the evidence beyond a reasonable doubt that on or about the 31st day of December, 1999, the defendant, GILBERTO LERMA TORRES, did then and there drive or operate a motor

## VIII. CONCLUSION

Having overruled Appellant's five points, we affirm the trial court's judgment.

vehicle in a public place located in Denton County, Texas, while intoxicated, to wit: said defendant did not have the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, or having an alcohol concentration of 0.08 or more, you will find the defendant guilty as charged in the information.