COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| LORENZO AGUILAR, | | No. 08-09-00296-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Criminal Court No. 2 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070C16354) |
| | § | |

## O P I N I O N

Lorenzo Aguilar, was charged by information with driving while intoxicated. He pled not guilty and proceeded to trial. A jury found him guilty, and the trial court assessed punishment at a $500 fine and 180 days in jail. The court then suspended the sentence and ordered Appellant placed under community supervision for one year. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

At approximately 12:15 a.m. on December 14, 2007, Officer Miguel Carzoli observed a white pickup truck approach the intersection of Thunderbird and Dew Street and fail to make a complete stop at the stop sign. At the time, the officer was parked on Dew facing Thunderbird in a marked patrol car working on his log sheets. He was approximately thirty yards away from the intersection. Although it was dark outside, the street was well lit and he had a clear view of the four-way stop. According to Officer Carzoli, the driver of the pickup truck was headed northbound on Thunderbird. Although he did not see whether the truck's tires actually stopped spinning, Carzoli knew the driver failed to make a complete stop because the light from the vehicle's headlights passed through the intersection without pause.

Officer Carzoli began pursuit and caught up to the vehicle at a red light at Thunderbird and Shadow Mountain. At some point between initiating pursuit and the light turning green, Carzoli activated his emergency lights and dashboard camera. Almost immediately, the driver pulled the truck into a parking lot.

Carzoli approached the vehicle and identified the driver as Lorenzo Aguilar. He asked Appellant for his license and insurance, but Appellant handed him the license and registration. Initially, the officer noticed the smell of alcohol on Appellant's breath. Appellant told the officer that he had some drinks at the country club and was on his way home. In addition to the smell of alcohol, Officer Carzoli noticed Appellant slurred a few words.

Officer Carzoli asked Appellant to exit the truck. He then performed three Standard Field Sobriety Tests (SFSTs): (1) the horizontal gaze nystagmus (HGN), which checks the subject's eyes using a stimulus such as a pen or a finger; (2) the walk-and-turn exercise, which tests the subject by having him walk toe to heel in a straight line and then turn a certain direction; and (3) the one-leg stand test, which tests the subject by having him lift one foot while looking at a stimulus and counting.[1] During the HGN test, Appellant's eyes were jerking and shaking as they followed the pen, which indicated nystagmus from the introduction of alcohol into the body. Overall, the officer detected six out of the possible six clues on the HGN test. On the walk-and-turn test, the officer looked for eight possible clues. Appellant displayed two out of eight: (1) not touching heel to toe; and (2) stepping off the line. A subject who displays two out of the eight clues fails the test. Finally, on the one-leg stand test, Officer Carzoli looked for a total of four possible clues. Aguilar displayed two out of four clues: he swayed and he put his foot down. An officer needs two out of four clues

[1] At the time of the stop, Officer Carzoli was a certified peace officer and a member of the El Paso Police Department's DWI task force. He was certified to administer SFSTs.

to determine that someone failed the one-leg stand test.

Based on Officer Carzoli's training and experience, and considering all the facts, he determined that Appellant was intoxicated. Accordingly, Officer Carzoli read him his *Miranda* rights as well as the required DWI statutory warnings for breath samples and placed him under arrest. After hearing the warnings, Appellant declined to give a breath sample.

During a recess on the second day of trial, defense counsel noticed a poster in the hallway outside the courtroom depicting a woman maimed by a drunk driver. Counsel advised the court of the poster's presence and of the fact that he'd seen the jurors viewing the poster. He objected as follows:

> MR. ORTIZ: Judge, right now when I was sitting outside in the hallway, I noticed the jury walking in, and as we -- they walk in past your hallway right here, there's a poster board of a maimed lady -- of a lady who was --
>
> THE COURT: Jackie.
>
> MR. ORTIZ: Right, Jackie. And, I mean, they are passing by there and they are -- all six of them that I saw, all of them are looking right at that poster board, you know, drunk drivers this, drunk drivers that. I think that that's prejudicial, that thing sitting right outside the courtroom. I just brought that to your attention, Judge, because my client and I were noticing that when we were sitting out there.
>
> THE COURT: Yeah.
>
> MR. ORTIZ: And we feel that it's highly prejudicial for these jurors who are passing through here in front of the courtroom, and they're going to the back and they're reading that stuff. I mean, that's -- those are things that are not in evidence, but they're looking at them. And I believe that they can -- they can be prejudiced that way, and I'm afraid that that could cause them to make a wrong decision in this case, a guilty verdict in this case, by them looking at that and going back there and when they're deliberating, saying, Hey, well, look at that poster board out there. You know what, we can't -- we've got to convict this guy.
>
> I'm afraid I'm going to ask for a -- I'm going to ask for a mistrial at this time because of that poster board out there, Judge.

The trial court denied the motion.

Following the guilty verdict, Appellant filed a motion for new trial alleging that he was denied a fair trial due to the jury's exposure to the poster. At the hearing, counsel told the court he personally observed jurors walk past the poster on the way back from lunch. He argued that his client was denied a fair trial because the jury was able to look at the photograph and take it into evidence even though it was not properly admitted. Counsel did not call witnesses or present juror affidavits. Instead, he argued, "I don't see how it cannot affect a jury. We don't know what they talked about when they were in the back of the room, in the jury room." The trial court denied the motion for new trial and this appeal follows.

## OUTSIDE INFLUENCE ON THE JURY

In his first issue, Appellant contends the trial court erred in refusing to grant a mistrial after defense counsel advised the court that the jury viewed a prejudicial poster as they entered and exited the courtroom. He maintains that the presence of the anti-DWI poster during his trial denied him his constitutional right to a fair trial consistent with due process of law.

### *Standard of Review*

A mistrial is an extreme remedy which is only appropriate for only highly prejudicial and incurable errors. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App. 2003). It is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Grotti v. State*, 209 S.W.3d 747, 776 (Tex.App.--Fort Worth 2006, pet. granted). The determination of whether an error justifies a mistrial is made by examining the particular facts of the case. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex.Crim.App. 2000). A mistrial is required when an improper reference is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Grotti*, 209 S.W.3d at 776; *Westmoreland v. State*, 174 S.W.3d 282, 290 (Tex.App.--Tyler 2005, pet.

ref'd).

We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Accordingly, we view the evidence in the light most favorable to the trial court's ruling, upholding the decision if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007); *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). A trial court abuses its discretion only when its decision is so arbitrary and unreasonable that no reasonable view of the record could support the ruling. *Webb*, 232 S.W.3d at 112; *State v. Herndon*, 215 S.W.3d 901, 907 (Tex.Crim.App. 2007).

*Analysis*

In all criminal prosecutions, the accused has a right to a fair trial by an impartial jury. U.S. CONST. amend VI; TEX. CONST. art. I, § 10. It has long been recognized that the right to a fair trial is one of the most precious and fundamental rights of our justice system.[2] *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed 2d 126 (1976).

In his motion for new trial, Appellant alleged that jurors were looking at a poster while walking in the hallway outside the court room. The poster depicts a young girl before and after a DWI accident Counsel described the "after" photograph as "an image of her face with no nose, eyes burnt off, and no ears, she does not look human. The gruesome photograph of this person depicts her being burned beyond recognition of how she previously looked." Appellant argues that this

_____

[2] Appellant's arguments invoke both state and federal constitutional protections, but he has not separated his issues on appeal in such a way as to argue a separate ground of relief under the Texas Constitution. Therefore, we must assume that he is claiming no greater protection under the Texas Constitution than that provided by the United States Constitution. *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993).

poster is inherently prejudicial because its location on a bulletin board some twenty feet from the courtroom "must have impacted the jury."

At least two of our sister courts have previously decided almost identical issues. *See Hartman v. State*, 917 S.W.2d 115 (Tex.App.--San Antonio 1996), *rev'd on other grounds*, 946 S.W.2d 60 (Tex.Crim.App. 1997); *Torres v. State*, 109 S.W.3d 602 (Tex.App.--Fort Worth 2003, no pet.). In *Hartman*, the defendant was convicted of a DWI. *Hartman*, 917 S.W.2d at 115. During trial, the district attorney's office placed anti-DWI posters throughout the courthouse as part of an anti-DWI campaign. *Id.* at 122. On appeal, Hartman argued that he was denied due course of law because the posters--which contained statistics and urged people to join the campaign--were located some twenty feet from the central jury room. *Id.* at 121-22. The court rejected this argument, noting that there was no evidence that the contents of the posters had any effect on any juror. *Id.* at 122. Similarly, in *Torres*, the defendant argued that the presence of anti-DWI posters in the court house lobby violated his constitutional rights to a fair trial, due process, and due course of law. *Torres*, 109 S.W.3d at 602. The Fort Worth Court of Appeals relied on *Hartman* and held that the appellant failed to present evidence that any of the jurors were affected by the mere presence of the posters. *Torres*, 109 S.W.3d at 604-05. ("Appellant directs us to nothing in this record that suggests that the contents of these posters had any effect upon any juror in this case.").

In an analogous situation, this court held that the defendant--who was accused of indecency with a child--failed to show that jurors were improperly influenced by banners, cut-outs, and posters placed throughout the courthouse proclaiming the month of trial as "Child Abuse Prevention Month." *Camarillo v. State*, No. 08-02-00318-CR, 2004 WL 100526 at *6 (Tex.App.--El Paso Jan. 22, 2004, pet. ref'd). The court found that Camarillo produced no evidence that the banners and cut-outs actually influenced the jury. *Id.*

Appellant acknowledges *Hartman* but claims its reasoning is infirm. Instead, he argues that the character of the poster here is so prejudicial that injury must be presumed and he need not prove that the jurors' actually saw, or were influenced by, the poster. We disagree. Absent evidence that the poster had an actual effect on the jurors, we will not presume prejudice. *See Ramirez v. State*, No. 2-09-136-CR, 2010 WL 1946825 *9 (Tex.App.--Fort Worth May 13, 2010, pet. ref'd)(finding no abuse of discretion in the trial court's decision to deny a mistrial where defendant provided no evidence that the "victim's display" was emotionally inflammatory, and he did not show whether any members of the jury "actually noticed the display, or, if they did notice it, how it affected them to the extent that they would have been unfairly prejudiced against him"); *Stewart v. State*, 856 S.W.2d 567, 569 (Tex.App.--Beaumont 1993, no pet.)(holding that the use of the term "Drug Impact Court" denoting a specialized docket of the court, and the appearance of that name on a sign, where jury members could see it before entering courtroom, did not violate defendant's right to fair trial, despite defendant's claim that the court's designation was tantamount to instructing the jury that defendant was a drug dealer, where defendant failed to make clear showing from record that his right to an impartial jury had been somehow overcome, hindered, or adversely affected by trial court's designation as "Drug Impact Court"); *Rogers v. State*, 846 S.W.2d 883, 884-85 (Tex.App.--Beaumont 1993, no pet.)(use of the term "Drug Impact Court" to denote a specialized docket, and the appearance of that name on a sign outside the door where jury members could see it did not violate due process, despite defendant's claim that the name created a prejudicial sense of foreboding or mission upon entry into courtroom). Because the record is insufficient to establish actual or inherent prejudice arising from the presence of the poster, we overrule Issue One.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Appellant argues the evidence is factually insufficient to support his conviction

for driving while intoxicated. However, since Appellant filed his brief, the Texas Court of Criminal Appeals has ruled that the *Jackson v. Virginia* legal sufficiency standard is the only standard applicable to determine whether the evidence is sufficient to support each element of a criminal offense. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). Therefore, in the interests of justice, and in light of the *Brooks* decision, we will construe Issue Two as a challenge to the legal sufficiency of the evidence. *See id*. at 898-900.

A legal sufficiency review requires the appellate court to consider all the evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899, *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence is sufficient to sustain the conviction if, considering the collective weight of all the incriminating circumstances, the conclusion is warranted. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). When conducting such a review, we are required to defer to the jury's role as the sole judge of witness credibility, and the weight of their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. The fact finder's verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). This standard applies equally to direct and circumstantial cases. *See Geesa v. State*, 820 S.W.2d 154, 163 (Tex.Crim.App. 1991).

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX.PEN.CODE ANN. § 49.04(a)(West 2003). The Texas Penal Code defines "intoxication" as:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the

body; or

(B)  having an alcohol concentration of 0.08 or more.

TEX.PEN.CODE ANN. § 49.01(2)(A)(B).  Because Appellant declined to take a breath test, he was charged under subparagraph (a), and the State was required to prove that appellant, as a consequence of alcohol consumption, did not have the normal use of his mental or physical faculties while operating his vehicle. *See id.*  Evidence of intoxication may include (1) slurred speech; (2) bloodshot eyes; (3) the odor of alcohol on the person; (4) the odor of alcohol on the breath; (5) unsteady balance; or (6) a staggered gait.  *See Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex.Crim.App. 1985).

During the guilt-innocence phase, only Officer Carzoli testified.  We have already detailed his account of the events.  His uncorroborated testimony, standing alone, is sufficient to establish the element of intoxication. *See Valles v. State*, 817 S.W.2d 138, 141 (Tex.App.--El Paso 1991, no pet.)(conviction of driving while intoxicated was supported by testimony of police officers that defendant appeared to be speeding, that the car was weaving, that defendant failed to stop at proper place at intersection, that defendant had difficulty getting out of car after it was stopped, had difficulty locating driver's license, had breath smelling of alcohol, had difficulty maintaining balance, was unable to perform dexterity tests, had slurred speech and red and glassy eyes, and was, in officers' opinions, intoxicated); *Annis v. State*, 578 S.W.2d 406, 407 (Tex.Crim.App. 1979) (testimony of trooper, an experienced highway patrol officer who on numerous occasions had observed persons under the influence of alcoholic beverages, who observed that defendant appeared disorderly and that his speech was "mush-mouthed" and who concluded that defendant was intoxicated while operating a motor vehicle, was sufficient to establish element of intoxication).

Appellant also contends that the evidence is insufficient because Officer Carzoli, "had a very

limited recollection of what occurred on the night in question," and his testimony at trial was inconsistent with his suppression hearing testimony and the "physical facts" or the videotape. Even when conflicting evidence is introduced at trial, we regard the jury's verdict as conclusive because the jury is the sole judge of the witnesses' credibility and the weight attributed to their testimony. *See Brooks*, 323 S.W.3d at 899-900; *Mauldin v. State*, No. 08-09-00028-CR, 2010 WL 4523761, at *3 (Tex.App.--El Paso Nov. 10, 2010, pet. ref'd). Here, the jury heard the testimony of the Officer and viewed the videotape. Any inconsistencies in the officer's testimony or conflicts between the officer's testimony and the videotape were resolved by the jury in favor of a guilty verdict. We must give due deference to the fact finder's determinations in our review of the evidence, and as the judge of the credibility of the witnesses, the jury had the right to believe all, some, or none of the testimony.

Considering all the evidence in the light most favorable to the verdict, we conclude the jury was rationally justified in finding Appellant's guilt beyond a reasonable doubt as to each element of the offense. *See Brooks*, 323 S.W.3d at 899. We overrule Issue Two and affirm the ruling of the trial court.

August 26, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)