NO. 07-02-0365-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



NOVEMBER 27, 2002


______________________________



ROBERT SCHEIDT
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE COUNTY COURT AT LAW OF RANDALL COUNTY;



NO. 2002-1134-L; HON. JAMES W. ANDERSON, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ. and BOYD, SJ. (1)

 Appellant Robert Scheidt (Scheidt) filed a notice of appeal in this court from his
conviction of two traffic violations in the Amarillo Municipal Court, Potter County, Texas. 
The Randall County Court at Law previously dismissed Scheidt's appeal of those
convictions for want of jurisdiction. After perfecting his appeal, Scheidt filed various
documents with this court illustrating that he was attempting to appeal the Amarillo
Municipal Court judgment directly to this court as opposed to appealing the dismissal by
the Randall County Court at Law. So, we directed him by letter dated October 29, 2002,
to tell us in writing why the pending appeal should not be dismissed for want of jurisdiction.

 In his response, Scheidt failed to clarify whether the appeal is one directly from the
Amarillo Municipal Court or the Randall County Court at Law. Instead, he represents that
he perfected his appeal to this court in accordance with the law and should we attempt to
remand the proceeding to the county court at law, he will "exhaust remedy in the State
courts to have the appeal heard by a competent judiciary" because he "has no intention
of submitting himself repeatedly to the abuses imposed on him by the courts below . . . ." 
So too does he castigate this body for "ignoring" his motions to 1) recuse the judge of the
county court at law from a proceeding that does not pend before him and 2) to order that
same judge to show cause why he should not be held in contempt.

 A court of appeals only has the jurisdiction provided to it by law. Ex parte Lewis,
663 S.W.2d 153, 154 (Tex. App.--Amarillo 1983, no writ) (holding that the jurisdiction of
the Court of Appeals is established by various constitutional and statutory provisions). 
Pursuant to statute, the appellate courts for the Amarillo Municipal Court of record are the
county courts at law in Potter and Randall Counties. Tex. Gov't Code Ann. §30.00931
(Vernon Supp. 2002). No authority grants us the right to hear a direct appeal from a
conviction by the Amarillo Municipal Court. Therefore, to the extent that Scheidt is
attempting to appeal directly to us from that court, his appeal is dismissed for want of
jurisdiction. To the extent that Scheidt is challenging the dismissal of his appeal by the
Randall County Court at Law for want of jurisdiction, we have jurisdiction of that matter. 

 Also pending before us are two motions of Scheidt. Through the first, he asks that
we recuse the Randall County Court at Law judge, and, through the second, that we hold
the same judge in contempt for purportedly violating our abatement order of September
12, 2002. Scheidt provides no legal authority to support his proposition that an appellate
court may order the recusal of a county court at law judge through a proceeding other than
mandamus. Nor have we found any authority that enables us to recuse a trial judge from
a case that does not pend before him. Consequently, the motion to recuse is overruled. 

 Regarding the motion to show cause, we reviewed the record of the proceeding held
by the county court at law per our abatement order. The transcript of the abatement
hearing illustrates that the trial court held the hearing as directed. Nothing appears of
record from which one could reasonably infer that our abatement order was violated by the
county court at law. Nor does Scheidt assert (other than by a general, factually absent
conclusion) what the trial court should have done but failed to do to avoid purportedly
violating our abatement order. Accordingly, we deny that motion as well.

 Finally, we admonish Scheidt to comply with the rules of appellate procedure in
prosecuting this appeal. See Kindley v. State, 879 S.W.2d 261, 264 (Tex. App.--Houston
[14th Dist.] 1994, no pet.) (holding that individuals acting pro se on appeal must comply with
the applicable rules of appellate procedure). Furthermore, we recognize that advocates
of a position must advocate their position zealously. Yet, briefs, motions, or other
documents tendered to this court which contain slanderous, deceitful, disrespectful,
factually baseless, or uncivil comments or accusations or which are of such tone will be
struck and returned. And, the continuation of such conduct will result in the implementation
of other appropriate sanctions, including the dismissal of the appeal.

 Per Curiam

Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann.
§75.002(a)(1) (Vernon Supp. 2002). 



 352 (Tex.App.-Amarillo 2001, pet. refused). 

 Under Rule 702, the trial court must determine whether proffered scientific evidence
is sufficiently reliable and relevant to assist the jury. See Jackson v. State, 17 S.W.3d 664,
670 (Tex.Crim.App. 2000). Ordinarily scientific evidence is offered through the opinion
testimony of an expert witness. The burden is on the proponent of expert testimony to
prove by clear and convincing evidence at a preliminary "gatekeeper" hearing outside the
presence of the jury that the testimony is trustworthy. Hurrelbrink, 46 S.W.3d at 352. The
trial court must make this pre-admission determination whether the science in question is
well established or novel. Jackson, 17 S.W.3d at 670. From the presentation at the
gatekeeper hearing, the trial court must be satisfied that (1) the witness qualifies as an
expert by reason of knowledge, skill, experience, training, or education; (2) the subject
matter of the testimony is appropriate for expert testimony; and (3) admitting the expert
testimony will assist the fact-finder in deciding the case. Vela v. State, 209 S.W.3d 128,
131 (Tex.Crim.App. 2006); Rodgers v. State, 205 S.W.3d 525, 527 (Tex.Crim.App. 2006);
Alvarado v. State, 912 S.W.2d at 215-16. These conditions are commonly known as (1)
qualification; (2) reliability; and (3) relevance. Vela, 209 S.W.3d at 131. 

 Qualification

 Qualification is distinct from reliability and relevance and thus should be evaluated
independently. Vela, 209 S.W.3d at 131. The proponent of expert testimony must
establish that the witness possesses "knowledge, skill, experience, training, or education"
and that the testimony of the expert will "assist the trier of fact." See Tex. R. Evid. 702. 
The qualification inquiry considers first whether the witness possesses sufficient
background in a particular field, and second whether that background "goes to the very
matter on which [the witness] is to give an opinion." Vela, 209 S.W.3d at 131 (quoting
Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)). (3) Said simply, there must be a "fit"
between the subject matter in issue and the familiarity of the expert. Broders, 924 S.W.2d
at 153. In determining whether the trial court abused its discretion in evaluating the
qualifications of an expert, an appellate court may consider several criteria: (1) the
complexity of the field of expertise; (2) the conclusiveness of the expert's opinion; and (3)
the centrality of the area of expertise to resolution of the case. Rodgers, 205 S.W.3d at
528. "Because the possible spectrum of education, skill, and training is so wide, a trial
court has great discretion in determining whether a witness possesses sufficient
qualifications to assist the jury as an expert on a specific topic in a particular case." Id. at
527-28. An appellate court therefore rarely disturbs the trial court's determination that a
particular witness is or is not qualified to testify as an expert. Id. at 528 n.9.

 Appellant argues Mullins was not qualified to render an expert opinion on
identification by shoe print comparison. According to appellant, Mullins "acted as nothing
more than a lab technician following a set of instructions or protocols."

 According to his trial testimony, Mullins is a trace element analyst for the DPS. He
holds a bachelor of science degree and began work for the DPS in 1999. Since 2003, he
has worked in "impressions." He has primarily received in-house training involving three
steps: from familiarity of the discipline to passing all competency tests to supervised
casework. Training then became ongoing and included classes taught by experts in the
field. Mullins kept abreast of publications in the discipline and protocols of the DPS. At the
time of trial, he had worked over 100 impression cases but had not previously testified in
the area. On cross-examination, Mullins stated he was not aware of a published error rate
for shoe print comparison. He lacked familiarity with the works of three authors in the
discipline named by appellant's counsel.

 The field of expertise in shoe print comparison is not complex. Rodgers, 205
S.W.3d at 528. Nor is the degree of scientific expertise required high, particularly when
the discipline is compared with, for example, DNA profiling. Id. Indeed, Texas courts have
long admitted lay and expert testimony on shoe print comparison. Id. at 532. Here, the
jury was able to examine some of the items compared by Mullins. Moreover, other
evidence linked appellant to the theft of the ATM machine. On this record, we cannot say
the trial court abused its discretion by finding Mullins qualified to render opinion testimony
on shoe print comparison.

 Reliability

 The Court of Criminal Appeals held in Kelly, 824 S.W.2d 568, that Rule 702 requires
satisfaction of a three-part reliability test before novel scientific evidence is admissible: (1)
the underlying scientific theory must be valid; (2) the technique applying the theory must
be valid; and (3) the technique must have been properly applied on the occasion in
question. Id. at 573. 

 Factors relating to the reliability determination include: (1) the extent to which the
underlying scientific theory and technique are accepted as valid by the relevant scientific
community, if such a community can be ascertained; (2) the qualifications of the expert(s)
testifying; (3) the existence of literature supporting or rejecting the underlying scientific
theory and technique; (4) the potential rate of error of the technique; (5) the availability of
other experts to test and evaluate the technique; (6) the clarity with which the underlying
scientific theory and technique can be explained to the court; and (7) the experience and
skill of the person who applied the technique on the occasion in question. Kelly, 824
S.W.2d at 573. Subsequently the court held that the Kelly analysis applies to all scientific
evidence, novel or not. Hartman v. State, 946 S.W.2d 60, 62-63 (Tex.Crim.App. 1997).

 It is not necessary in every instance that a party seeking to present evidence of a
scientific principle satisfy the first and second prongs of the Kelly test. Hernandez v. State,
116 S.W.3d 26, 28-29 (Tex.Crim.App. 2003) (per curiam). A complete Kelly "gatekeeper"
hearing is necessary only at the inception of judicial consideration of a specific type of
forensic scientific evidence. Id. Thereafter, it is unnecessary for trial courts to re-invent
the scientific wheel in every trial. Id. If the Court of Criminal Appeals, this court, or another
Texas appellate court has previously determined the validity of a particular scientific theory
or technique, then the party offering the expert testimony need not satisfy Kelly's first two
criteria. See id. at 27. The trial court and a reviewing court can rely on prior opinions and
take judicial notice of those findings. See id. at 31 n.12. 

 For decades, our Court of Criminal Appeals has recognized that shoe print
impression testimony is generally admissible. Rodgers, 205 S.W.3d 532. 

 [T]he unbroken line of decisions of this State, and every other State with
which we are familiar, hold . . . that a witness who has made measurements
of the tracks, and the foot or shoe of the defendant; or who has made some
such comparison between the tracks and the shoes of the defendant, as
placing the shoe in the tracks; Or who has detailed peculiarities in the tracks
on the ground which correspond with the shoes, or with the proven or
admitted tracks of the defendant, that in either of these cases or instances
the witness may give his opinion as to the similarity of the tracks.


Martinez v. State, 169 Tex.Crim. 229, 232-33, 333 S.W.2d 370, 373 (1960) (quoting
Mueller v. State, 85 Tex.Crim.Rep. 346, 354, 215 S.W. 93, 97 (1919)). "It would seem to
be a generally accepted proposition that for the purpose of identifying the accused as the
guilty party, evidence of the correspondence of the accused's shoes . . . to tracks found
near the scene of the crime is admissible." Rodgers, 205 S.W.3d at 532. n.25 (quoting E.
LeFevere, Annotation, Footprints as Evidence, 35 A.L.R.2d 856, *2 (1954-Updated July
2005)); see also United States v. Ford, 481 F.3d 215, 218 n.4 (3d Cir. 2007) (citing
Terrence F. Kiely, Forensic Evidence: Science and the Criminal Law, 281-314 (2d ed.
2006) (shoe print identification evidence has long been admitted)). Here, at the conclusion
of the gatekeeper hearing the trial court noted that in prior cases it had admitted similar
impression comparison evidence.

 A distinction lies between the forensic identification sciences, such as shoe print
identification,

 [A]nd the type of science typically at issue in Daubert [ (4)] cases. Expert
testimony based on empirical science does things like determining what
substance something is (e.g., what is that white powder?) or measuring the
quantity of something (e.g., how much alcohol is in the murder victim's
blood?). Forensic identification science has a different objective. Forensic
identification evidence serves to connect a crime scene object or mark to the
one and only source of that object or mark. The reliability of these sciences
rests upon the experience and observational powers of their practitioners. 
While a strict application of the Daubert factors to forensic identification
sciences might be a fruitless exercise, due to the inherently experiential
nature of this type of expertise, the [trial court] will be in the best position to
make this determination. 

Ford, 481 F.3d 215, 219 n.5 (citations and internal quotation marks omitted). 

 Given the cited pronouncements of our State's highest criminal court, we find the
trial court's finding that shoe print comparison evidence is valid was not an abuse of
discretion.

 We now turn to the validity of the technique applying shoe print comparison and the
propriety of its application by Mullins in the underlying case. See Kelly, 824 S.W.2d at 573. 
A substantial record on appellant's reliability challenge exists, in part because it includes
the testimony of Mullins during the gatekeeper hearing and before the jury. (5)

 Mullins testified that impressions is a recognized area of forensic science subject
to agency protocols. As we have noted and reiterate for this discussion, the validity of
shoe print comparison has long been accepted as a valid means of connecting a crime
scene object or mark to the source of that object or mark.

 During the gatekeeper hearing, and with fuller elaboration before the jury, Mullins 
testified of the process of shoe print comparison. The analysis begins with a shoe print
impression presented by a photograph or tangible item. An impression is a pattern. It
could be in dust or three dimensional, such as in the soil. The analyst documents the
features of the impression. A determination of shoe design and size is made. The analyst
considers the presence or not of "accidentals." Accidental characteristics are blemishes
on the shoe, such as cuts, scratches or a rock imbedded in the tread pattern. A test
impression is made of the bottom of the shoe by inking it with latent print ink and applying
the shoe sole to white paper. An overlay, or transparency, is made of the impression. The
overlay is for comparison with the test impression of the shoe. It permits determination that
the elements of the shoe, such as the shoe pattern and size, align. Within these
parameters the analyst looks for accidentals. A comparison is made between the
impression and the shoe test impression. If matching accidentals appear on the
impression and the shoe test impression, the analyst can draw a conclusion that no shoe,
other than the one under analysis, made the impression. On the other hand, the absence
of accidentals precludes ruling out another shoe of the same design and style as the
source of the impression. Accidentals are thus the key to comparison and elimination of
other shoes.

 Here Mullins testified he applied this technique in reaching his opinions. Noting
accidentals common to appellant's shoes and the impressions, Mullins opined that no shoe
but appellant's could have made the impression on three of the decals and the paper from
the getaway vehicle. Conversely, the other decal sampled did not contain an accidental
and therefore could have been produced by any shoe of like size and brand as appellant's.

 As noted, shoe print comparison is not a complex field. Rodgers, 205 S.W.3d at
533. (6) The jury heard Mullins' comparison testimony and had before it photographs of
appellant's shoes and the decals used for comparison. It was free to assign what weight
and credibility it chose to his opinions. 

 We conclude that the trial court did not abuse its discretion in impliedly finding the
technique of shoe print comparison valid and properly applied by Mullins to reach his
opinions in the underlying case. We overrule appellant's first issue.

Denial of Appellant's Motion for Directed Verdict

 Appellant complains by his second issue that the trial court erred in denying his
motion for directed verdict. The essence of the complaint is the State's evidence of
identification was legally insufficient. 

 The trial court's denial of a motion for directed verdict is reviewed as a challenge to
the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479, 482
(Tex.Crim.App. 1996). We therefore view the evidence in the light most favorable to the
verdict to determine whether, based on that evidence and reasonable inferences
therefrom, a rational jury could have found each element of the offense beyond a
reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); Conner
v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), citing Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury
would necessarily entertain a reasonable doubt of the defendant's guilt, due process
requires that we reverse and order a judgment of acquittal. Swearingen, 101 S.W.3d at
95 (citing Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992)). The identity of
a perpetrator may be established through direct or circumstantial evidence. Earls v. State,
707 S.W.2d 82, 85 (Tex.Crim.App. 1986). Proof of identity by circumstantial evidence is
not subject to a more rigorous review than proof by direct evidence, since both are equally
probative. See McGee v. State, 774 S.W.2d 229, 238 (Tex.Crim.App. 1989). 

 Following a chase of the getaway vehicle, and the flight of its occupants on foot,
appellant was found in an open garage winded and sweating profusely. It was an early
hour of the day not known for pedestrian traffic in the area. Appellant wore dark shoes as
did the individuals depicted in the store surveillance video. The video clearly depicts the
perpetrators' struggle to load the ATM in the bed of the getaway vehicle. In the course of
this effort, at least two of the thieves repeatedly stepped on the white decals strewn on the
sidewalk in front of the store. When contacted in the garage by police, appellant told of
fleeing would-be attackers. Yet appellant displayed no relief at the protective presence of
police. And police were unable to corroborate appellant's story. Mullins testified that two
decals found in front of the store and a sheet of paper from the floorboard of the getaway
vehicle contained appellant's right shoe print. Another decal contained his left shoe print. 
From the detailed video, the jury was able to follow the decals from the store to the
sidewalk and observe foot contact with the perpetrators. It had in evidence the decals and
photographs of appellant's shoes and heard Mullins' comparison opinions matching
appellant's shoes to some of the decals and the sheet of paper. When the evidence and
reasonable inferences therefrom are viewed in the light most favorable to the verdict we
find a rational juror could have found beyond a reasonable doubt that appellant committed
the offense for which he was indicted. Finding the evidence legally sufficient, we conclude
the trial court did not err in denying appellant's motion for directed verdict.

 We overrule appellant's second issue and having overruled his two issues, affirm
the judgment of the trial court.

 James T. Campbell

 Justice

Publish.
1. Tex. Penal Code Ann. § 31.03(a),(e)(5) (Vernon Supp. 2009).
2. ' ' 
 ' 
 ' 
3. 
 
 - 
4. 
 
5. " " 
 - 
 
6. 
 
 ' - "" 
 
 
 
 -