COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-189-CR
 
GILBERTO LERMA TORRES                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                                   
STATE
------------
FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
------------
OPINION
------------
I. INTRODUCTION
       
Appellant Gilberto Lerma Torres appeals his conviction for misdemeanor driving
while intoxicated ("DWI"), which was enhanced by a prior DWI
conviction. A jury found him guilty, Appellant pleaded true to the enhancement,
and the trial court sentenced him to 210 days' confinement in the Denton County
Jail and suspended his driver's license. Appellant raises five points. We will
affirm.
II. FACTUAL BACKGROUND
       
Between approximately 12:30 a.m. to 12:45 a.m. on December 31, 1999, Daniel
Tsakonas, Brett Allen, and James Beugler were driving north on Interstate 35
from Dallas to Lewisville. As they approached the Highway 121 bypass, the three
men saw a car approaching them on their side of the highway because it was being
driven in the wrong direction. Beugler testified that the car was coming toward
them down the shoulder of the road, and that it would swerve out into the
traffic lanes before moving back onto the shoulder. The car, which was being
driven by Appellant, hit an automobile in front of the car being driven by
Tsakonas and then veered into the left lane, where it collided with Tsakonas's
car.
       
After the accident, Allen and Beugler went to Appellant's car to check on him.
When Allen asked Appellant if he was okay, Appellant nodded his head yes. Allen
also asked Appellant if he had been drinking, and he again nodded his head yes.
Beugler called 911, and police and EMS came to the scene of the accident.
       
Appellant was taken by ambulance to Medical Center of Lewisville, and he had no
traumatic life-threatening injuries. Officer Scott Hayney, who helped clear the
accident site, did not perform any field sobriety tests on Appellant at the
accident scene, but he went to the hospital and spoke with Appellant at
approximately 1:30 a.m. or slightly before 2:00 a.m. During his time with
Appellant, Officer Hayney smelled a moderate odor of alcohol on Appellant's
breath and noticed that Appellant's eyes were red, glassy, and bloodshot.
       
Because Appellant was lying in his hospital bed and because Appellant did not
want to participate in a horizontal gaze nystagmus exam, Officer Hayney did not
perform any field sobriety tests at the hospital. Instead, Officer Hayney asked
him questions about the events leading up to the accident. According to Officer
Hayney, Appellant did not realize that he was driving on the wrong side of I-35,
which is an interstate highway with three lanes in both directions. Also,
Appellant told Officer Hayney that he "did not know Lewisville, Texas, or
why he was coming from Lewisville" and that he thought he had been driving
on Highway 635 or the LBJ Freeway between Dallas and Irving en route to
Arlington, Texas.
       
When Officer Hayney asked Appellant about whether he had been drinking,
Appellant told him that he had had a quart of beer about 4:00 o'clock in the
afternoon, which Officer Hayney testified was not consistent with the odor he
smelled on Appellant an hour after the accident. In Officer Hayney's opinion,
Appellant was legally intoxicated at the time he was interviewed in the
hospital.
       
After obtaining Appellant's written consent, Officer Hayney asked Rose Becknauld,
a phlebotomist at Lewisville Medical Center, to draw a blood sample from
Appellant around 3:00 a.m. The sample was mailed to the Texas Department of
Public Safety Crime Lab in Garland, Texas on December 31, 1999, and the lab
received the sample on February 3, 2000. The lab performed two tests on
Appellant's blood. One test showed that Appellant's blood contained .1432 grams
of alcohol per 100 milliliters of blood, while the other test registered .1488,
both of which were over the legal limit of .08. After hearing and considering
all of the evidence presented at trial, a jury found Appellant guilty of
misdemeanor DWI.
III. ANTI-DWI POSTERS
       
In his first point, Appellant contends that the trial court erred in not
granting his request that certain anti-DWI posters be removed from the lobby of
the building in which the trial took place. Specifically, Appellant argues that
the presence of these posters resulted in the denial of his rights to a fair
trial by an impartial jury, to due process, and to the due course of law as
guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution and Article I, Sections 10, 13, and 19 of the Texas Constitution. See
U.S. Const. amend. V, VI, XIV; Tex. Const. art. I, §§ 10, 13, 19. The State
responds that there is no evidence that the posters influenced the jurors in
this case.
       
Before voir dire began, Appellant objected to two DWI-related posters which were
located in the lobby of the building where Appellant's trial occurred. Appellant
does not, however, cite any authority in support of his contention that his
constitutional rights were violated by the mere presence of these posters.
Moreover, as the State points out in its brief, Appellant has not shown that any
of the jury members in this case were prejudiced by the posters. See Hartman
v. State, 917 S.W.2d 115, 121-22 (Tex. App.--San Antonio 1996) (overruling
defendant's argument that he was denied due course of law due to anti-DWI
campaign posters being placed throughout the courthouse and approximately twenty
feet from the central jury room because there was no evidence that the posters
had any effect upon any potential juror), rev'd on other grounds, 946
S.W.2d 60 (Tex. Crim. App. 1997).
       
As in Hartman, Appellant directs us to nothing in this record that
suggests that the contents of these posters had any effect upon any juror in
this case. See id. Accordingly, we overrule Appellant's first point.
IV. BLOOD TEST RESULTS:
QUALIFICATIONS OF PHLEBOTOMIST
       
In his second point, Appellant argues that the trial court erred in allowing the
admission of the blood test results because the blood was not drawn by a person
qualified under section 724.017(a) of the transportation code. See Tex.
Transp. Code Ann. § 724.017(a) (Vernon 1999). In response, the State contends
that the phlebotomist who drew Appellant's blood was qualified under section
724.017(a). See id.
       
We review a trial court's ruling on the admissibility of evidence under an abuse
of discretion standard of review. Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000). According to section 724.017(a), "Only a
physician, qualified technician, chemist, registered professional nurse, or
licensed vocational nurse may take a blood specimen at the request or order of a
peace officer under this chapter." Tex. Transp. Code Ann. § 724.017(a).
Because a phlebotomist is not listed among those occupations which automatically
qualify under the statute, a phlebotomist must be proven to be
"qualified" before a blood sample he or she takes satisfies the
statute. Cavazos v. State, 969 S.W.2d 454, 456 (Tex. App.--Corpus
Christi 1998, pet. ref'd) (holding State failed to prove that the person drawing
blood was qualified under section 724.017 when no one testified regarding the
qualifications of the person who drew the blood and no evidence established that
the blood was drawn by someone the hospital had determined to be qualified); State
v. Bingham, 921 S.W.2d 494, 495 (Tex. App.--Waco 1996, pet. ref'd)
(overruling defendant's motion to suppress blood results and holding
phlebotomist was a "qualified technician," where phlebotomist and her
supervisor testified to her qualifications).
       
In this case, Becknauld testified to her qualifications outside the presence of
the jury. She testified that she was a third-shift phlebotomist at Lewisville
Hospital and that her duties were to collect specimens for hospital patients and
the emergency room. Becknauld testified that while she had no formal training,
she had been a phlebotomist for the past twenty-four years. She also testified
that, based on her experience, for the past six years she had been certified
through the National Phlebotomy Association. Becknauld testified that she drew
blood every day, and when asked how many times she had drawn blood in the last
twenty-four years, she replied, "Thousands and thousands and
thousands." Further, Becknauld testified that she was absolutely familiar
with the medical procedures to draw blood. After describing the general
procedure, she discussed the specific procedure used for drawing blood for
purposes of an alcohol test.
       
Based on the foregoing testimony, we hold that the trial court did not abuse its
discretion in determining that Becknauld was qualified under section 724.017 and
in admitting Appellant's blood test results. See Tex. Transp. Code Ann.
§ 724.017(a); Weatherred, 15 S.W.3d at 542; Bingham, 921
S.W.2d at 495. We therefore overrule point two.
V. BLOOD TEST RESULTS:
RETROGRADE EXTRAPOLATION
       
In his third point, Appellant complains that the trial court erred in allowing
the admission of the blood test results in violation of Rules 401, 402, and 403
of the Texas Rules of Evidence. See Tex. R. Evid. 401, 402, 403.
Appellant asks this court to hold that the alcohol concentration evidence is not
admissible without retrograde extrapolation;(1)
however, the court of criminal appeals has stated that it has never accepted
this argument. See Beard v. State, No. 0282-00, slip op. at 8, 2002 WL
31116936, at *3 (Tex. Crim. App. Sept. 25, 2002); see also Mireles
v. Texas Dep't of Public Safety, 9 S.W.3d 128, 132 (Tex. 1999); Price,
59 S.W.3d at 300; O'Neal v. State, 999 S.W.2d 826, 832 (Tex.
App.--Tyler 1999, no pet.); 6 Michael B. Charlton, Texas Practice: Texas
Criminal Law § 29.3 (2d ed. 2001) (recognizing that a number of Texas courts
have rejected the requirement for expert extrapolation); but see Bagheri v.
State, 87 S.W.3d 657, 660 n.1 (Tex. App.--San Antonio 2002, pet. granted)
(distinguishing Mireles and Price as being based on pre-Daubert
law and stating that "[w]hether the intoxilyzer test results are admissible
in the absence of a retrograde extrapolation is a question the Texas Court of
Criminal Appeals has expressly left open"). In light of this precedent and
the other evidence proving that Appellant was intoxicated at the time he was
driving his car, we hold that the trial court did not abuse its discretion in
admitting the evidence of Appellant's blood test without retrograde
extrapolation evidence. See Beard, No. 0282-00, slip op. at 8, 2002 WL
31116936, at *3; Weatherred, 15 S.W.3d at 542; Price, 59
S.W.3d at 300. Accordingly, we overrule point three.
VI. BLOOD TEST RESULTS:
CONFRONTATION RIGHTS
       
In his fourth point, Appellant argues that the trial court erred in allowing the
admission of the blood test results because Appellant's right to confront and
cross-examine witnesses against him was violated. Specifically, Appellant
contends that because the computer program used in the gas chromatograph machine
that was used to analyze his blood was not available for him in court to
examine, he was not able to properly cross-examine the "witness," as
Appellant describes the computer program, as to its calculations and
calibrations. We disagree.
       
Contrary to Appellant's characterization of the computer program as a
"witness," the program which ran the gas chromatograph machine was not
a person and could not be called to testify. See Tex. R. Evid. 601
("Every person is competent to be a witness except as otherwise
provided in these rules.") (emphasis added); cf. Stevenson v. State,
920 S.W.2d 342, 343 (Tex. App.--Dallas 1996, no pet.) ("The intoxilyzer
instrument is a computer, not a person. By definition, therefore, the
intoxilyzer is not a declarant."). We hold that Appellant's right to
confront and cross-examine witnesses against him was not violated because the
State could not have called the computer program as a witness.
       
Moreover, Appellant's specific objection at trial focused solely on his right to
confront and cross-examine the computer program, not on the scientific
reliability of the machine nor on his right to confront and cross-examine Chris
Youngkin, the criminalist(2) offered by the State
to provide expert testimony regarding the gas chromatograph and Appellant's
blood test. In fact, Appellant conceded at trial that the State met its burden
under Kelly v. State with respect to Youngkin's testimony on gas
chromatography. 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Further, Youngkin
testified that gas chromatography testing was accepted in the scientific
community and that the way he applied the underlying theory of the testing in
this case was accepted in the scientific community. We cannot say that the trial
court abused its discretion in admitting evidence from Appellant's blood tests
on the basis of Appellant's alleged violation of his right to confront and
cross-examine witnesses against him. See Weatherred, 15 S.W.3d at 542.
We therefore overrule point four.
VII. SPECIFIC VERDICT FORM
       
In his fifth point, Appellant contends that the trial court erred in refusing
his request for a specific verdict form.(3) 
We disagree. As we have stated before, "the definition of 'intoxicated' in
the DWI statute sets forth alternative means of committing one offense and does
not set forth separate and distinct offenses." Price, 59 S.W.3d at
303. Therefore "a special verdict form is not required when a defendant is
charged with DWI under multiple theories of intoxication." See id.
We hold the trial court did not err in refusing Appellant's request for a
specific verdict form, and we overrule his fifth point.
VIII. CONCLUSION
       
Having overruled Appellant's five points, we affirm the trial court's judgment.
 
                                                       
   ANNE GARDNER
                                                       
   JUSTICE
 
PANEL F: DAUPHINOT, HOLMAN, and GARDNER,
JJ.
PUBLISH
DELIVERED: June 5, 2003

1.  Retrograde extrapolation is the computation back
in time of the blood-alcohol level that estimates the blood-alcohol level at the
time of driving based on a test result from some time later. Price v. State,
59 S.W.3d 297, 300 (Tex. App.--Fort Worth 2001, pet. ref'd) (citing Mata v.
State, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001)).
2.  When asked what a criminalist is, Youngkin
replied, "I analyze drug evidence and do blood alcohol
determinations."
3.  The charge read, in pertinent part:

        
 Now therefore, if you find from the evidence beyond a reasonable doubt that on
 or about the 31st day of December, 1999, the defendant, GILBERTO LERMA TORRES,
 did then and there drive or operate a motor vehicle in a public place located
 in Denton County, Texas, while intoxicated, to wit: said defendant did not
 have the normal use of mental or physical faculties by reason of the
 introduction of alcohol into the body, or having an alcohol concentration of
 0.08 or more, you will find the defendant guilty as charged in the
 information.