Affirmed and Memorandum Opinion filed May 8, 2008








Affirmed and Memorandum Opinion filed May 8, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00277-CR

____________

 

VICTOR CRUZ GONZALEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 1045834

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Victor Cruz Gonzalez, appeals from his
conviction for aggravated assault.  A jury found him guilty, and the trial
court sentenced him to twenty years in prison.  In three issues, appellant
contends that (1) the evidence was factually insufficient to support the
verdict; (2) the trial court erred in admitting into evidence a buccal swab
with which a DNA sample was taken; and (3) the trial court erred in admitting
testimony that appellant may have harmed himself prior to the incident for
which he was indicted.  We affirm.








Background

Nelson Nazario testified that he is a pastor at a church in
Spring, Texas.  On August 13, 2005, at around 9:40 p.m., Nazario stopped at a
gas station near his home after having dropped a member of his church off at
the member=s home.  While he was cleaning his windshield, Nazario
was attacked by a man wearing a camouflage suit, a camouflage cap, a blond wig,
gloves, and a mask.  The man held a twelve inch knife and stabbed Nazario with
it five times.  During the attack, Nazario asked his assailant who he was and
what he wanted, but the assailant did not speak.  Nazario described the man as
six feet tall and about 200 pounds.  Nazario was stabbed in the leg, hip, and
abdomen.  At one point, as Nazario was falling to the ground, he managed to
kick the assailant=s face, and the assailant=s cap fell to the
ground.  The assailant left the cap when he fled, and Nazario identified a cap
in court as the one left by the assailant.  Nazario described the handle of the
knife used by the assailant as being Alike a sword.@  The assailant
did not take anything from Na

Nazario further testified that he had previously counseled
appellant and Marisela Cabrera, who both attended his church.  In the initial
counseling session, Nazario learned that Cabrera wanted to marry appellant, but
appellant still had a wife in Mexico.  Later, Cabrera decided that she did not
want to marry appellant and eventually left appellant.  According to Nazario,
appellant had asked him on multiple occasions to tell Cabrera she should marry
appellant, but Nazario refused to do so.  The last meeting came about six to
eight months before the attack.  Appellant stopped coming to the church shortly
after the last meeting.

A week before the attack, Maria Jimenez, a deacon at
Nazario=s church, told
Nazario that appellant had told her that he (appellant) wanted to Aget@ Nazario.  Nazario
told this to the police when they asked him at the hospital whether he had any
enemies.  Nazario also testified that appellant threatened him in a phone call
after appellant stopped attending the church.  Nazario, however, said that he
did not tell this to the police either before or after the attack.  Nazario
said that he recognized appellant as the assailant because of his body and the
way that he walks, even though he (Nazario) did not see the assailant=s face.








Marisela Cabrera testified that she has known appellant for
about ten years.  She moved in with him in March 1999.  When they started
having problems, they attended counseling sessions with Nazario.  During the
last meeting, appellant became very angry.  After Cabrera left appellant,
appellant became obsessed with her, called her frequently, and showed up at her
work every day.  According to Cabrera, appellant consistently blamed Nazario
for Cabrera=s leaving and was very angry at the pastor.  At some
point, appellant told Cabrera that appellant had been assaulted and wounded,
but she believed that he had actually inflicted the wound on himself in an
attempt to get her attention.  About two weeks before the assault, appellant
complained of kidney pain, which caused him to walk slowly, and Cabrera allowed
him to stay at her place for two days and a night.  Cabrera also testified that
appellant sometimes wore camouflage, and he owned what she described as a Alittle sword.@  Cabrera is
currently married to Nazario=s uncle.

Maria Jimenez testified that she is a deacon at Nazario=s church.  She
stated that appellant told her  he hated Nazario for interfering in his
relationship with Cabrera and that he (appellant) Awas capable to
even kill@ Nazario.  Jimenez immediately thought appellant might
have been the assailant when she learned Nazario had been attacked, but she did
not tell the police her suspicions until they came to her.








Detective Felipe Rivera of the Harris County Sheriff=s Department
testified that a surveillance videotape from the gas station showed that
Nazario=s assailant drove
to and from the station in a small, four-door, maroon vehicle.  After appellant
was identified as a suspect, Rivera obtained a DNA sample from appellant by
using a buccal swab.  He further testified that he took a DNA sample from
another suspect, who was found near the scene dressed in camouflage pants. 
Rivera described for the jury the procedure used Ain taking a buccal
swab from a suspect.@  Regarding the sample from the other
suspect, he specifically stated that he followed all the proper procedures. 
Regarding the sample taken from appellant, Rivera did not expressly say whether
or not he followed the proper procedures.  Rivera testified that the other
suspect did not fit the physical description of the assailant given by Nazario
and did not physically look like the man seen in the surveillance videotape.

Rivera further testified that when questioned, appellant
said that he had been at a friend=s house praying at
the time of the assault.  When Rivera questioned the friend, however, the
friend could not remember for certain whether appellant was with him that
night.  During their initial interview, appellant told Rivera that his car had
been broken into two weeks before the assault and that several items of clothing
had been stolen.  After the results of the DNA testing came back showing
appellant=s DNA as the only DNA on the cap taken from the
assailant, appellant suggested the cap must have been one of the ones stolen
from his vehicle.  Rivera also testified that Nazario had at first described
the attacker as shorter than he subsequently did, 5'8" to 5'9" rather
than 6 feet.  In his testimony, Nazario denied that he ever told police the
attacker was shorter than 6 feet tall.

There was additional evidence from multiple sources that
Maritza Gonzalez, appellant=s girlfriend at the time of the assault
and wife at the time of trial, owned a small maroon vehicle that generally
matched the description of the one seen in the surveillance videotape.  Renee
Mata testified that he owns an auto repair shop and was in possession of the
vehicle in question at the time of the assault.  He said that Maritza Gonzalez=s entire family
brings their cars to his shop.

Maritza Gonzalez testified that on the day of the assault,
she and appellant drove on some errands before he dropped her off at her sister=s house around 9
p.m.  She said that at the time, appellant was in pain and Awas real bad off@ due to kidney
cancer, but he was still able to walk.  Maritza=s sister confirmed
that appellant dropped Maritza off at approximately 9:15 that night.








In his testimony, appellant denied that he assaulted
Nazario.  He also denied that he and Cabrera were ever Aboyfriend and
girlfriend,@ although he admitted they had Aan intimate
relationship.@  Regarding the day of the assault, appellant
testified that he and his wife went on some errands; he then dropped her off at
her sister=s and continued to a friend=s house to pray
before returning to his business where he slept.  Appellant further stated that
a month after the assault, he was hospitalized for the removal of one of his
kidneys.  He also said that prior to the assault, his vehicle had been broken
into and a hat, among other things, was stolen out of it.

Factual Sufficiency of the Evidence

In his first issue, appellant contends that the evidence is
factually insufficient to support the verdict.  The standards of review for
assessing factual sufficiency are well-established.  See, e.g., Watson v.
State, 204 S.W.3d 404, 406-17 (Tex. Crim. App. 2006).  Appellant primarily
asserts that the jury should have had a reasonable doubt as to guilt because
the State failed to offer evidence that a DNA sample was properly obtained from
appellant.  In his testimony, Detective Rivera explained the proper method for
obtaining a DNA sample and expressly stated that he followed all the proper
procedures in obtaining a sample from another suspect; however, he did not
expressly state whether or not he used all the proper procedures in obtaining a
sample from appellant.  Nonetheless, the jury could have reasonably inferred from
Rivera=s testimony that
he performed all the proper procedures in obtaining appellant=s sample.  See
generally Mahmoudi v. State, 999 S.W.2d 69, 73 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d) (Ait is within the
province of the jury to . . . weigh the evidence and to draw reasonable
inferences therefrom@).  There is no suggestion in the evidence
that Rivera failed to use proper procedures at any point.  Whether the jury
could have entertained a reasonable doubt regarding appellant=s DNA sample is
not the standard governing our review.  The standard is whether the great
weight and preponderance of the evidence contradicts the jury=s verdict.  Watson,
204 S.W.3d at 417.  Under this standard, we find appellant=s primary argument
unpersuasive.








Appellant additionally asserts that no evidence other than
the DNA results identified him as Nazario=s assailant.  This
assertion is incorrect.  Nazario himself testified that he identified appellant
as the assailant based on his body and the way that he walked.  Furthermore,
there was significant evidence that appellant not only had a motive for
attacking Nazario (that Nazario supposedly had caused Cabrera to leave
appellant) but also that he had threatened to harm Nazario (both personally to
Nazario in a phone call and to Jimenez).  Appellant additionally points to (1)
Cabrera=s testimony
wherein she stated appellant was in pain and was walking slowly two weeks
before the assault, (2) appellant=s testimony that
he was somewhere else at the time of the assault, and Mata=s testimony that
he had possession of Maritza Gonzalez=s car at the time
of the assault.  The fact appellant may have been hobbled two weeks before the assault
does not necessarily show that he could not have committed the assault,
especially in light of appellant=s admission he was
able to get around on the day of the assault.  Furthermore, the jury was
entitled to disbelieve appellant=s self-serving
testimony as well as the testimony of Mata, who described receiving significant
business from Maritza=s family.  In light of the strong evidence
of appellant=s guilt (DNA evidence, eyewitness identification,
evidence of motive and threats, etc.), we cannot say that the jury=s verdict was so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Accordingly, we overrule appellant=s first issue.

Admission of the Buccal Swab








In his second issue, appellant contends that the trial
court erred in admitting into evidence the buccal swab that was used to take a
DNA sample from appellant=s mouth.  Specifically, appellant contends
that the State failed to demonstrate that the technique used to obtain the DNA
sample was proper as required for Ascientific
evidence@ under Rule 702 of
the Texas Rules of Evidence and the cases of Kelly v. State, 824 S.W.2d
568 (Tex. Crim. App. 1992), and Hartman v. State, 946 S.W.2d 60 (Tex.
Crim. App. 1997).  However, Rule 702 expressly applies only to expert
testimony.  Tex. R. Evid. 702.  Likewise, the issue in both the Kelly
case and the Hartman case was whether certain expert testimony met the
admissibility criteria for scientific evidence.  Hartman, 946 S.W.2d at
60-63; Kelly, 824 S.W.2d at 569-74.  These authorities have no
application to physical evidence such as a buccal swab.  Appellant neither
complains on appeal regarding any expert testimony, nor makes any additional
arguments against admission of the buccal swab.  Accordingly, we overrule his
second issue.

Evidence of Self-Inflicted Harm

In his third issue, appellant contends that the trial court
erred in admitting evidence that he had previously stabbed himself in an
apparent attempt to get Cabrera=s attention.  Appellant specifically
complains regarding the following exchange while the prosecutor was examining
Cabrera:

Q.      Did Victor Gonzalez do anything physical to
himself after you cancelled the court date?

[Defense Counsel]:  Objection to relevance, your
Honor.

THE COURT:          Objection
overruled.

A.      Sometime later I found out that he had been
assaulted.

Q.      Did you know what happened to him during
this assault?

A.      No.  He just called me and told me that he
had been assaulted and that he had been wounded and that he wanted me to come
over there.

Q.      How was he wounded?

A.      I don=t know because I didn=t go.  I never went.

Q.      Didn=t he tell you how he was wounded?

A.      Yes.  He told me that two people had
attacked him.

Q.      Did those two people who attacked him have a
weapon?

A.      He said that they did, that they had
attacked him with a knife.

Q.      Did you ever see or did he ever show you
where he was stabbed?

A.      Yes.

Q.      And where did he tell you he had been
stabbed?

A.      I don=t remember if it was the left side or the right side.

Q.      Did he tell you what he was stabbed with?

A.      Yes.

Q.      What did they stab him with?

A.      With a knife.








Q.      Did he go to the hospital.

A.      No.

Q.      Did he treat himself?

A.      Yes.

Q.      How did he do that?

A.      He said that he treated himself or cured
himself since he has medical knowledge.  I don=t know how he did it.

Q.      Did he ever call the police to your
knowledge?

A.      No.

Q.      Did he ever tell you that he had reported
this alleged assault to the police?

[Defense Counsel]:  Object to the relevance of the
whole line of questioning, has nothing to do with this case.

THE COURT:          Objection
overruled.

A.      No.

Q.      Did you then question whether or not
[appellant] had been stabbed by someone else?

A.      I think that it was another lie to call my
attention or to get my attention.

Q.      What do you think happened?

A.      That he
did it to himself so that I would go and be there.








On appeal, appellant argues that the testimony suggesting
he had injured himself was not relevant and therefore should have been excluded
under Rule 402 of the Texas Rules Of Evidence.  Tex. R. Evid. 402.  However, in order to preserve error
regarding admission of evidence at trial, a party must make a timely and
sufficiently specific objection and obtain a ruling thereon.  Tex. R. App. P.
33.1(a).  Even if a proper objection is made when the evidence in question is
first introduced, any error in the admission of the evidence is cured when the
same evidence comes in elsewhere without objection.  Valle v. State, 109
S.W.3d 500, 509 (Tex. Crim. App. 2003).  One exception to the requirement of a
contemporaneous objection occurs when a party requests a continuous or Arunning@ objection.  See
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).[1] 
Here, to properly preserve error, defense counsel needed to have either
objected to each purportedly irrelevant question or requested a running
objection.  See id.

Instead, defense counsel only objected when the prosecutor
posed the first query in the line of questioning and then toward the end of the
exchange.  Counsel failed to object to the vast majority of the supposedly
objectionable questions or to request a running objection.  Perhaps most
importantly, appellant failed to lodge any objection to the questions and
answers he now claims harmed him the most:

Q.      Did you then question whether or not
[appellant] had been stabbed by someone else?

A.      I think that it was another lie to call my
attention or to get my attention.

Q.      What do you think happened?

A.      That he
did it to himself so that I would go and be there.

Because
no error was preserved in regard to admission of the testimony, we overrule
appellant=s third issue.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed May 8, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The other exception to the contemporaneous objection
rule occurs when a court hears objections to evidence outside the presence of
the jury.  See Geuder v. State, 115 S.W.3d 11, 13-14 (Tex. Crim.
App.2003).  Appellant does not assert that this occurred in the case presently
before us.